Irving B. Kendall, J.
On October 7, 1974, information was received from a reliable informant by Detective Nicholas Pappas of the Mount Vernon Police Department that the defendants Ralph A. Mauro and Anthony J. Meticheccia were involved in an elaborate confidence game.
According to the informant, Mauro and Meticheccia would telephone an individual for the purpose of determining if he would be interested in buying a TV set at a bargain price.
As soon as the prospective buyer (the mark) would express interest, he would be instructed to go to the rear of a local Korvette store where he would be met by a person who would give him further instructions.
At the appropriate time, the unwary buyer would meet a man dressed in a Korvette uniform who would ask for the money. Upon receiving same, he would direct the buyer to drive his car to a waiting platform where the TV set would be delivered to him.
While the buyer was on the way to the loading platform, the individual dressed in the Korvette uniform would depart, leaving the buyer parked at the waiting platform waiting for a delivery which would never take place.
The informant revealed that he had previously participated with Mauro and Meticheccia in the scheme and that his confederate had played the same confidence game on numerous other occasions with other pick-up men and that they had *243 boasted to him that the victims never complained to the authorities after the "sting”.
Armed with this information and reasonable cause to believe that the crime of grand larceny was being perpetrated by Mauro and Meticheccia, Detective Pappas and other law enforcement agents learned that the base of the operation of the suspected swindle was the second floor at 144 Stevens Avenue, Mount Vernon, New York.
Because crimes were involved warranting a Grand Jury investigation, the District Attorney of Westchester County issued an ex parte subpoena and served same upon the New York Telephone Company.
As a result of this subpoena it was learned that telephone number 914-699-4612 was listed in the records of the telephone company to the defendant Ralph A. Mauro at 144 Stevens Avenue, Mount Vernon, New York.
The record before this court does not indicate who actually installed the same but the District Attorney has conceded that a "pen register” device was installed without prior judicial approval.
The results of the use of the "pen register” enabled the investigators to get the telephone numbers of all outgoing calls made from Mauro’s telephone and eventually identify and locate recipients of those calls.
A "pen register” is a device which is attached to a telephone line and which, by the use of dashes corresponding to the numbers dialed, records on a tape the telephone number called. A "pen register” does not record or monitor any conversation nor can it reveal whether the dialed number responded to the phone.
In addition to supplying the investigators with the information that a telephone was listed to the defendant Mauro, the utility also gave the investigators the pole location of his phone.
No judicial approval was sought by the District Attorney prior to the issuance by him of the ex parte subpoena nor the installation of the "pen register”, nor did the District Attorney mention the subpoena or the "pen register” when he applied to County Judge Richard Daronco for a wiretap order on October 30, 1974.
There is no question and I find that as a direct result of the use of the ex parte subpoena and "pen register” the investiga *244 tors were able to gather evidence against the defendants Mauro, Meticheccia and Manzo, enabling them to confirm the modus operandi of the defendants.
Application was then made to County Judge Daronco for a wiretap order, with no reference to the ex parte subpoena or "pen register”. On October 30, 1974 the County Judge signed an order authorizing the District Attorney to intercept, listen to and make copies of all telephone conversations bearing the number 914-699-4612 listed to Ralph Mauro.
On November 7, 1974, as a result of information received over Mauro’s tapped telephone, a combined operation was staged by the Mount Vernon Police Department and the Westchester County Sheriff’s Department.
Officers of the Mount Vernon Police Department including Detective John De Mascio went to the second floor room at 144 Stevens Avenue, Mount Vernon, New York, to éffect the arrest of the defendants Meticheccia and Tisher after learning that defendant John Manzo had fled from the stake-out scene at Cross County Shopping Center and allegedly had kidnapped a female undercover officer.
While seated at a small night table in the room occupied by Meticheccia and Tisher and after they had been placed under arrest on a charge of grand larceny, Detective De Mascio called in to police headquarters, using the telephone instrument which was on the table.
Next to the instrument was an orange colored notebook open to plain view. This notebook was seized as evidence by Detective De Mascio after he observed names and numbers on the open page which he remembered hearing during the wiretap operations.
The defendants have moved to suppress the orange colored notebook on the ground that the police had no search warrant and on the further ground that a notebook is not contraband per se.
This phase of the suppression motion is denied.
When the police entered the room they were armed with information they had received as a result of the wiretap order issued by Judge Daronco as well as from Detective Pappas. They also had been advised that during the Cross County Shopping Center encounter one of the four defendants had taken a female undercover cop as a hostage. Consequently, *245 they had probable cause to enter the premises without an arrest warrant and to arrest defendants Meticheccia and Tisher without a warrant (CPL 140.10) and to seize the orange colored notebook.
The police officers were validly present in a constitutionally protected area for the legitimate purpose of effecting a lawful arrest. They did not go to the defendants’ apartment looking for contraband but came upon it inadvertently. Under these circumstances the seizure was legal. (See People v Neulist, 72 Misc 2d 140.)
The defendants have also moved to suppress all of the evidence obtained by the People as a result of the use by the District Attorney, without prior judicial approval, of an ex parte subpoena.
I find as a matter of law that the District Attorney had the power to issue the ex parte subpoena inasmuch as he was, within the meaning of CPL 610.20 (subd 2), conducting a criminal investigation.
The definition of "criminal proceeding” contained in CPL 1.20 (subd 18) includes any proceeding which "involves a criminal investigation”.
When the New York Telephone Company received this subpoena it had a choice of notifying its subscriber, the defendant Ralph Mauro, so that he could take legal steps to quash the subpoena; of moving in the County Court of Westchester County to quash the subpoena on the ground that the subpoena lacked judicial sanction; or the telephone company could have taken the position that by not co-operating with the District Attorney it would subject itself to criminal penalties under section 250.35 of the Penal Law. This statute imposes a duty upon a telephone company to co-operate fully with any law enforcement officer investigating the criminal use of its facilities, provided the telephone company has "knowledge that the facilities of such corporation are being used to conduct any criminal business, traffic or transaction”.
I find that the defendants’ constitutional rights were not violated by the use of the ex parte subpoena without prior judicial approval. There should be a balance of competing interests represented by the need for legitimate and effective law enforcement and the control of intrusions on personal freedom of movement.
I find that the intrusion upon Mauro’s privacy was trivial to *246 the extent that his telephone number was revealed by the New York Telephone Company.
However, I find that the Fourth Amendment rights of defendant Ralph Mauro were violated by reason of the use of the "pen register” without prior judicial approval.
CPL 700.20 (subd 2, par [b]) requires the applicant for an eavesdropping warrant to make: "A full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an eavesdropping warrant should be issued”.
The facts alleged by Detective Pappas in support of the District Attorney’s application for a wiretap order to support his informant’s statement to him about Mauro and Meticheccia’s confidence game, could not have been ascertained without the use of the "pen register”.
How else could Detective Pappas have learned the identity of two of these defendants’ prospective "marks”, Messrs. Bro-wand and Munn.
What harm to the People’s developing case against the defendants would have resulted if the District Attorney had (a) applied for a warrant or order authorizing the installation of a "pen register” and (b) disclosed to County Judge Daronco that a "pen register” had been utilized (successfully) to achieve the results listed by Detective Pappas?
Instead of receiving full disclosure the County Judge was told that "a check of the records of the New York Telephone Company” had revealed the critical information about Messrs. Broward and Munn.
Procedures should be utilized by the police which would safeguard this community from the criminal minority without destroying the sense of dignity and freedom of the law-abiding majority.
As stated by former Chief Court of Appeals Judge Stanley Fuld in his dissenting opinion in People v Rivera (14 NY2d 441, 452): "The privacy which the Constitution guarantees is assured to the best of men only if it is vouchsafed to the worst, however distasteful that may be.”
I am not here ruling that a "pen register” may not be used without prior judicial approval in every case.
The courts of our State have already ruled that such approval is not required where it is used with the consent of the telephone subscriber who has been the recipient of annoying *247 calls. (See People v Stewart, 73 Misc 2d 399; People v Green, 63 Misc 2d 435.)
As pointed out by Criminal Court Judge Hellenbrand in People v Green (supra, p 438): "The unwanted receiver of 35 calls on a 'ring and hang up’ gets the message.”
And as observed by Federal Judge McCree in United States v Caplan (255 F Supp 805, 808): "Paul Revere’s associate, who hung a lantern in the Old North Church, would hardly have been exculpated at a trial for treason if he argued that he was not sending a communication, but was only illuminating the belfry.”
The point is that by using or permitting the use of a "pen register” without prior judicial approval (except in cases involving harassing calls) the government is violating the Fourth Amendment rights of citizens, i.e., their right to privacy.
I find that the use of a "pen register” records the existence of a conversation within the meaning of CPL 700.05 (subd 3) which defines the terms "intercepted communication” and "contents”, and that the use of a "pen register” without prior judicial approval under the circumstances in this case violated the Fourth Amendment rights of the defendant Ralph A. Mauro.
As stated in the dissenting opinion of Court of Appeals Judge Kenneth Keating in People v McDonnell (18 NY2d 509, 511-512): "We must remember that privacy is the essence of the Fourth Amendment and that the exclusion of evidence is merely the mode adopted to fully secure it. The right is personal, and where a person’s privacy has not been violated, he has no cause to complain merely because the violation of another person’s right (if that be the case) reveals evidence incriminating him. (See People v Portelli, 15 NY2d 235.)”
Therefore as to the defendant Ralph A. Mauro the motion to suppress all evidence obtained as a result of the "pen register” and the wiretap order is granted.
Because the defendants Manzo, Meticheccia and Tisher had no proprietary interest in telephone number 914- 699-4612, I find that they lacked standing to assert any constitutional rights of privacy; consequently, as to these defendants the motion to suppress all evidence resulting from the use of the ex parte subpoena, the "pen register” and the wiretap order is denied.
*248 In Jones v United States (362 US 257, 261) it states: "In order to qualify as a 'person aggrieved by an unlawful search and seizure’ one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else.”