745 P.2d 1101

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Rene BROWN, Rebecca Nelson, a/k/a Rebecca Wolf, a/k/a Rebecca Lumen, Steve Wolf, Charlie Thompson, James Yarborough, a/k/a Yarb, and Monte Brandt, Defendants–Appellants,**

**and**

**Judy Thompson, Defendant.**

No. 16268.

Court of Appeals of Idaho.

Nov. 2, 1987.

Alan E. Trimming, Public Defender, by Amil N. Myshin, Jr. (argued), Boise, for defendants-appellants.

Jim Jones, Atty. Gen. by Lynn E. Thomas (argued), Sol. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

This case is a companion to *State v. Thompson*, 113 Idaho 466, 745 P.2d 1087 (Ct.App.1987). The appellants have been accused of conspiring with each other and with Judy Thompson to smuggle marijuana into the Idaho State Correctional Institution (ISCI). Thompson and the codefendants moved to suppress evidence obtained from a wiretap on Thompson's telephone. The evidence was suppressed as to Thompson but not as to the codefendants. The district court also denied a motion by the codefendants to dismiss the information for failure to state an offense under Idaho law. The court's rulings produced an interlocutory appeal by the state in the Thompson case and an interlocutory appeal by the codefendants in this case.

The instant appeal raises four principal questions: (1) Do these codefendants have

standing to challenge the use of a pen register that generated information for probable cause to place the wiretap on Thompson's telephone? (2) Did the wiretap comport with the requirements of Idaho's electronic surveillance statutes? (3) Was the evidence presented at the preliminary hearing sufficient to hold defendants to answer in the district court? (4) Is it necessary to allege and to prove an overt act in order to obtain a conviction for conspiracy to violate the Uniform Controlled Substances Act? For reasons explained below, we uphold the district court's rulings on these questions.

As explained in our *Thompson* decision, the codefendants here were charged with conspiring to violate the Uniform Controlled Substances Act, I.C. § 37–2732(f). The prosecutor's information alleged that the defendants had conspired to deliver marijuana to inmates at the ISCI. The evidence supporting this allegation was obtained largely from a wiretap on Judy Thompson's telephone. The codefendants, consisting of four prisoners and two women who visited them, became implicated in the conspiracy when the wiretap intercepted their conversations with Thompson about drug trafficking. Following the arrests, officers who had recorded the incriminating conversations interviewed each of the defendants and positively matched their voices with the voices recorded. Subsequently, a seven-day preliminary hearing was held. The magistrate found probable cause to hold all defendants to answer in the district court. Before trial the defendants submitted their motion to suppress evidence and to dismiss the prosecutor's information. The motion was denied, leading to this appeal.

I

The first issue is the appellants' right to challenge a pen register installed prior to the wiretap on Thompson's telephone. Our decision in *Thompson* contains a full statement of the facts framing this issue. They need not be reiterated here. It suffices to say that in *Thompson* we upheld the validity of the pen register under then-existing statutes, under the Fourth Amendment, and under the Idaho Supreme Court's extant view of Article 1, § 17, of the Idaho Constitution. However, we invited our Supreme Court to reexamine the applicability of the state constitution. Unless the Supreme Court accepts this invitation, and does so in *Thompson* itself, the standing question in the present case will be moot. Nevertheless, in order to dispose completely of the appellants' argument, we will address the standing issue on its merits.

At the outset, we observe that none of the information gathered from the pen register, and used to support the application for a wiretap, concerned any of these appellants. They were not parties to any of the calls dialed from Thompson's phone and mentioned in the police affidavit for the wiretap. The only calls mentioned in the affidavit were made to Judy Thompson's purported supplier in Twin Falls and to two other women who were suspected of visiting inmates at the prison. Thus, it appears that appellants' argument boils down to a claim of vicarious standing. They wish to reach back and strike evidence obtained in a manner that arguably violated the constitutional rights of someone else—but which in no way implicated them in criminal activity. They argue that because the pen register data was a critical element in the calculus of probable cause for issuance of the wiretap order, and because the wiretap did produce incriminating evidence against them, they have standing to challenge the pen register. We disagree.

■ The Fourth Amendment, and its analogue in Article 1, § 17, of the Idaho Constitution, do not apply to all searches and seizures. The scope of protection is determined by the privacy interests at stake. In this respect the state and federal constitutional protections are coextensive. Consequently, our discussion of the Fourth Amendment applies equally to Article 1, § 17, on this point.

■ The traditional rules of standing no longer adequately frame the proper inquiry into whether an accused's Fourth Amendment rights have been violated by a search. The modern approach allows a

search to be challenged when a personal interest under the Fourth Amendment is asserted and a legitimate expectation of privacy is shown to exist in the area searched or the items seized. *State v. Holman*, 109 Idaho 382, 707 P.2d 493 (Ct.App. 1985). *Cf. Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). A court may not exclude evidence under the Fourth Amendment unless it finds that an unlawful search or seizure violated the defendant's own constitutional rights. *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980). The defendant's Fourth Amendment rights are violated only when the challenged conduct invaded his own legitimate expectation of privacy rather than that of a third party. *Id.; State v. Bottelson*, 102 Idaho 90, 625 P.2d 1093 (1981). Coconspirators and codefendants are accorded no special standing under the Constitution.

*Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), illustrates these principles. In *Alderman* the United States Supreme Court applied the privacy-based concept of standing to evidence obtained by electronic surveillance. The Court concluded that a defendant's personal Fourth Amendment rights would be implicated if the government overheard conversations of the defendant himself or conversations occurring on his premises, whether or not he was present or participated in those conversations.

We next consider the question of statutory standing. *Alderman* is consistent with Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2518(10)(a), which allows only an "aggrieved person" to move to suppress the contents of communications intercepted in violation of the Act. A similar provision is contained in the Idaho electronic surveillance statutes, collectively known as the Communications Security Act and codified at I.C. §§ 18–6701 to –6725. The Idaho Act

is derived directly from the federal statutory scheme. As we noted in *Thompson*, pen registers were not covered by the state and federal statutes in existence at times pertinent to this case. However, we believe that case law on the question of standing under the federal statute, and under similar statutes in other states, is instructive here.

Various federal and state courts have discussed the standing question under their respective electronic surveillance statutes. In cases analogous to the present situation, defendants implicated by a wiretap that was lawful as to them have attacked previous wiretaps that provided the information necessary to obtain authorization for the wiretaps that produced the incriminating information.[1] In these cases, none of the defendants seeking to suppress evidence obtained from the prior wiretaps had been intercepted by that initial surveillance. The courts addressing this situation have held with virtual uniformity that a person intercepted by a second or subsequent wiretap has no standing to attack an earlier wiretap on grounds derived exclusively from alleged defects in the earlier wiretap as to which he was not an "aggrieved person." *See, e.g., United States v. Civella*, 648 F.2d 1167 (8th Cir.), *cert. denied*, 454 U.S. 867, 102 S.Ct. 330, 70 L.Ed.2d 168 (1981); *United States v. Wright*, 524 F.2d 1100 (2d Cir.1975); *United States v. Caruso*, 415 F.Supp. 847 (S.D.N.Y.1976), *affirmed without opinion*, 553 F.2d 94 (2d Cir.1977); *State v. Olea*, 139 Ariz. 280, 678 P.2d 465 (App.1983).[2]

■ Courts that have addressed standing in the specific context of pen registers have reached similar conclusions, regardless of whether the pen register has been covered by a jurisdiction's particular electronic surveillance statute. Thus, the courts have held that only the caller, the person called and those with a possessory

---

1. The parallel to this case is complete if the challenged pen register in this case is equated with an earlier wiretap. Each is a prior, arguably illegal electronic search that gathers information used by the state in its showing of probable cause in a subsequent wiretap application.

2. We note that our research has disclosed one case which holds to the contrary and allows indirect or vicarious standing. *See People v. Amsden*, 82 Misc.2d 91, 368 N.Y.S.2d 433 (N.Y. County Ct.1975). However, we find the reasoning in that case unpersuasive.

interest in the telephone have objectively reasonable expectations of privacy in information disclosed by a pen register. *Ellis v. State,* 256 Ga. 751, 353 S.E.2d 19 (1987) (pen register covered by electronic surveillance statute); *People v. Meticheccia,* 83 Misc.2d 241, 371 N.Y.S.2d 805 (N.Y.City Ct.1975), *reversed on other grounds,* 91 Misc.2d 129, 397 N.Y.S.2d 514 (N.Y.1977) (only those with proprietary interest in telephone have standing to challenge pen register); *Commonwealth v. Melilli,* 361 Pa. Super. 429, 522 A.2d 1107 (1987); *Commonwealth v. Beauford,* 327 Pa.Super. 253, 475 A.2d 783 (1984).

■ We agree with this reasoning. Accordingly, because none of the appellants here was a party to any of the pen register calls mentioned in the affidavit supporting the application for the wiretap order, and because none of the appellants alleged a possessory interest in the target telephone, they lacked standing to challenge the information gleaned from the pen register.[3] Thus, as regards these appellants, the pen register data was properly considered by the district court in determining that the wiretap was supported by probable cause.

## II

■ Appellants next contend that the state failed to comply with certain requirements of the Communications Security Act. They argue that because the state violated various provisions of the Act, all of the intercepted communications must be suppressed. *See* I.C. § 18–6705. Appellants press four claims under the statute.[4] We discuss each in turn.

## A

Appellants first assert that the order authorizing the surveillance was not supported by probable cause under I.C. § 18–6708(3). The statute provides, in pertinent part, as follows:

(3) Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting if the judge determines on the basis of the facts submitted by the applicant that:

(a) There is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 18–6706, Idaho Code;

(b) There is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

. . . .

(d) There is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

The findings required by this statute must be based on the affidavit submitted by the police. In this case, the question before the district judge on the motion to suppress was simply whether the affidavit established a substantial basis to find probable cause that Judy Thompson was engaged in a drug trafficking conspiracy and that she was using her home telephone to communicate with coconspirators. The coconspirators, including the appellants, were unknown when the application for the wiretap was made. Thus, their identity or their personal links to the conspiracy were not then at issue. Indeed, the express aim of the surveillance was to discover other unknown participants in the conspiracy.

■ In *Thompson,* we reviewed the affidavit presented to the issuing judge. It is

---

3. Because we conclude that none of the appellants possessed standing, we need not broach the thornier question of what legitimate privacy interests prison inmates may have in the telephone calls they make.

4. As to each claim the appellants are "aggrieved persons" within the meaning of the Act. All of them were parties, at one time or another, to the conversations intercepted by wiretap. Therefore, they have standing to challenge the wiretap evidence under I.C. § 18–6708(10)(a).

unnecessary to reproduce that discussion here. Reading the affidavit in its entirety, we concluded there, and we again conclude here, that the judge issuing the wiretap warrant had a substantial basis for concluding that probable cause existed. *State v. Lang*, 105 Idaho 683, 672 P.2d 561 (1983).[5]

B

Appellants next claim that the police failed to comply with the minimization requirements of I.C. § 18–6708(6). Section 18–6708(6) provides that "[e]very [wiretap] order and extension thereof shall contain a provision that the authorization to intercept ... shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter." The defendants have raised a veritable barrage of issues relating to this requirement. Reduced to their essentials, the defendants' arguments are (1) that the officers were given excessive discretion to determine what minimization procedures to apply, and (2) that the officers failed to exercise their discretion in a manner adequate to satisfy the statute. The district judge rejected these arguments.

Like other provisions of Idaho's electronic surveillance statutes, the minimization requirement is receiving its first scrutiny by an Idaho appellate court in this case. However, the language of I.C. § 18–6708(6) is virtually identical to that of its federal counterpart. *See* 18 U.S.C. § 2518(5). Accordingly, we may look to numerous federal decisions for guidance. Our Supreme Court held that "[a] statute which is adopted from another jurisdiction will be presumed to be adopted with the prior construction placed upon it by the courts of such other jurisdiction." *Nixon v. Triber*, 100 Idaho 198, 200, 595 P.2d 1093, 1095 (1979). The Idaho Legislature enacted title 18, chapter 67, in 1980. Accordingly, we will consult pre–1980 federal case law interpreting the Idaho statute.

The appellants first argue that the officers who conducted the surveillance in this case were given unfettered discretion to formulate and to apply minimization procedures. They argue that the order was defective on its face for failing to specify the procedures to be followed. They further assert that the officers were neither trained in the use of the equipment nor informed as to their minimization duties under the statute. However the facts and the case law are contrary to the appellants' position.

The federal courts have not required the issuing judge to specify the precise means by which minimization is to be accomplished. *See generally* J. CARR, ELECTRONIC SURVEILLANCE § 4.7(e)(2) (2d ed. 1986) (hereinafter CARR). Detailed instructions in the warrant itself would deprive the investigating officers of the flexibility required to conduct an effective investigation. C. FISHMAN, WIRETAPPING & EAVESDROPPING § 159, p. 232 n. 1 (1978). *Cf. United States v. Fino*, 478 F.2d 35 (2d Cir.1973), *cert. denied*, 417 U.S. 918, 94 S.Ct. 2623, 41 L.Ed.2d 223 (1974) (impossible for court to give detailed instructions on which calls to intercept because contents of conversations cannot be known in advance). Of course, issuing judges are empowered to require progress reports and to monitor the minimization process. *See* I.C. § 18–6708(7). Where the issuing judge has supervised the minimization process, its adequacy is more likely to be upheld. *United States v. Quintana*, 508 F.2d 867 (7th Cir.1975). Prosecuting attorneys also are encouraged to promulgate guidelines informing the officers of their duties under the statute and assisting them in implementing those duties. *See generally* CARR § 5.7(c). The active participation of prosecutors in supervising the surveillance is desirable. *United States v. Chavez*, 533 F.2d 491 (9th Cir.), *cert. denied*, 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed. 2d 837 (1976).

---

**5.** Our analysis also applies to the affidavit in support of the application for a thirty-day extension of the wiretap. That affidavit contained information gleaned from the initial surveillance as well as information presented in the original affidavit.

The procedures followed in this case met the requirements of the statute. The order authorizing the wiretap included a minimization provision which closely tracked the language of the statute. Although there was no judicial supervision of minimization procedures, the prosecutor in charge of the investigation met with all participating officers, provided them with detailed written guidelines of procedures to be followed, and received daily progress reports from the officer in charge. He even provided the police with a home telephone number and encouraged them to contact him at any hour. We think the statute was satisfied.

In a closely related argument, the appellants contend that the minimization efforts actually undertaken by the police were inadequate. We disagree. The purpose of the minimization requirement is to prevent the improper invasion of a target's privacy rights and to curtail the indiscriminate seizure of communications. *United States v. Clemente*, 482 F.Supp. 102 (S.D.N.Y.1979), *affirmed without opinion*, 633 F.2d 207 (2d Cir.1980). However, the statute "does not require that *all* conversations unrelated to criminal activity specified in the order be free from interception. Rather it requires that measures be adopted to reduce the extent of such interception to a practical minimum while allowing the legitimate aims of the government to be pursued." *United States v. Turner*, 528 F.2d 143, 156 (9th Cir.), *cert. denied*, 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975) (emphasis original).

Whether a minimization provision has been violated "turns on an objective assessment of the facts and circumstances confronting [the officers] at the time." *Scott v. United States*, 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). Among the factors to be considered are the nature and use of the telephone being tapped, the nature of the crime, the scope of the investigation, and whether patterns of non-criminal calls have been established over the course of the surveillance. *Id.* Thus, although statistics regarding the proportion of calls minimized are useful in determining compliance, they must be considered in light of the factors listed above. Further, officers may be accorded a short interval, such as two or three minutes, to determine whether a call is related to criminal activity. *E.g. United States v. Losing*, 560 F.2d 906 (8th Cir.), *cert. denied*, 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977). Because even innocent conversations sometimes turn to criminal matters, spot-monitoring may be allowed. *United States v. Daly*, 535 F.2d 434 (8th Cir.1976). In any event, the government, once challenged, bears the initial burden of showing compliance with minimization requirements. *United States v. Napolitano*, 552 F.Supp. 465 (S.D.N.Y.1982); *United States v. DePalma*, 461 F.Supp. 800 (S.D.N.Y.1978).

We believe the procedures actually followed in this case satisfied the statutory requirements. The officers had probable cause to believe that a broad criminal conspiracy involving drug trafficking was taking place. The identities of the conspirators, with the exception of Judy Thompson and her Twin Falls supplier, were unknown. The officers had information indicating that some kind of verbal code might be used—and this was confirmed in the course of the wiretap itself. The officers also had reason to suspect that Thompson's social life and criminal activities were interwoven. Under these circumstances, effective minimization was difficult. Nevertheless, the record indicates that extensive minimization was conducted. Roughly 700 completed calls were made during the course of the wiretap. Nearly 400 of those calls were of less than two minutes' duration. Of the 300 calls exceeding two minutes, the officers minimized in two-thirds of them. The minimization was accomplished by pressing a button which shut off both the audio monitor and the tape recorders. The officers then would spot-monitor.[6]

6. The guidelines provided by the prosecutor allowed officers to spot-monitor every fifteen seconds. However, our review of the DNR tapes prepared during the course of the wiretap—which recorded the minimization process down to the second—indicates that the officers did not

Upon this record we will not disturb the district court's finding that the minimization efforts were reasonable and adequate in light of the circumstances.

## C

Appellants next argue that the wiretap was authorized improperly because law enforcement officials did not adequately pursue other routine methods of investigation before resorting to the wiretap. This contention encompasses what is commonly known as the "necessity" requirement. Idaho Code § 18–6708(1)(c) requires that a wiretap application contain "[a] full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Similarly, section 18–6708(3)(c) permits the reviewing judge to issue the wiretap order if, among other things, he determines that "[n]ormal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." Because these provisions are essentially identical to their federal counterparts (18 U.S.C. § 2518(1)(c) and (3)(c)), we refer to federal cases for guidance.

The necessity requirement is not to be treated lightly. This statutory predicate to electronic surveillance has at least two policy origins. First, because wiretaps are unusually intrusive and clandestine types of searches, there must be a determination that the electronic surveillance will accomplish the specific objectives of the investigation. CARR § 4.4(d). Second, the necessity requirement limits the wiretap to the justification upon which it is based. This ensures a proportionality between the extent of the need for the information and the degree of intrusiveness. *Id.* The United States Supreme Court has commented that § 2518(1)(c) was "designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime,"

*United States v. Kahn,* 415 U.S. 143, 154 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974), and that electronic surveillance procedures "were not to be routinely employed as the initial step in criminal investigation." *United States v. Giordano,* 416 U.S. 505, 515, 94 S.Ct. 1820, 1827, 40 L.Ed. 2d 341 (1974). The legislative history indicates that Congress intended the courts to look for a "practical and common-sense" showing that the necessity requirement has been met. S.Rep. No. 1097, 90th Cong., 2d Sess. 90, *reprinted in* 1968 U.S.CODE CONG. & ADMIN.NEWS 2112, 2190.

 Necessity must be readily apparent from the affidavit in support of the wiretap application. Of course, the affidavit need not demonstrate that every conceivable alternative has been exhausted. *United States v. Alonso,* 740 F.2d 862 (11th Cir.1984), *cert. denied,* 469 U.S. 1166, 105 S.Ct. 928, 83 L.Ed.2d 939 (1985). On the other hand, neither may the courts accept bald conclusory statements concerning necessity. *United States v. Abascal,* 564 F.2d 821 (9th Cir.1977), *cert. denied sub. nom.; Frakes v. United States,* 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978). Rather, the affidavit, when read in its entirety, must show that

> in the particular investigation normal investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time [, or w]here such techniques have not been so employed ... under the particular circumstances of the case the employment of such techniques "reasonably appear [sic] unlikely to succeed if tried or to be too dangerous."

*United States v. Martinez,* 588 F.2d 1227, 1232 (9th Cir.1978) (*quoting United States v. Spagnuolo,* 549 F.2d 705, 710 (9th Cir. 1977)).

 Thus, as we recently noted in *State v. Martin,* 113 Idaho 461, 745 P.2d 1082 (Ct.App.1987), our standard of review is bifurcated. We exercise free review over whether a "full and complete state-

---

spot-monitor that frequently. Therefore, we need not decide whether fifteen seconds is an

appropriate interval for spot-monitoring.

ment" of necessity was submitted to the issuing judge. *United States v. Brown,* 761 F.2d 1272 (9th Cir.1985). However, we exercise deferential review on the question whether an adequate showing of necessity has been made. As stated by a federal court applying the nearly identical federal electronic surveillance statutes, the reviewing court determines only whether "the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Scibelli,* 549 F.2d 222, 226 (1st Cir.), *cert. denied,* 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). We interpret the word "minimally" to mean that the issuing judge must have had a substantial basis to conclude that the statutory requirements for a wiretap were satisfied. *Compare Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (magistrate must have substantial basis to conclude that probable cause exists to issue a search warrant).

The affidavit at issue here is fully described in our *Thompson* decision. It states that the police interviewed four different informants over an eighteen month period. Three of these persons were friends or acquaintances of Judy Thompson. One of them was a prison inmate. The fourth informant was anonymous. All four informants substantially corroborated each other. However, all informants indicated that they were no longer trusted by Judy Thompson and, therefore, could not infiltrate her organization.

The use of the pen register linked Thompson to the alleged source of supply in Twin Falls. The pen register also revealed that Thompson was contacting two women thought to be visiting ISCI. This was confirmed by prison officials. The affidavit further stated that Twin Falls police had conducted a two-year investigation of the suspected supplier. At least two attempts had been made to purchase narcotics from him, but he backed out both times. However, surveillance confirmed that he frequented the house in Twin Falls that Judy Thompson was calling (as disclosed by the pen register). Finally, the affiant reported that Boise police had conducted an intensive six-day surveillance of Thompson herself. The surveillance revealed nothing incriminating. Following this last unsuccessful venture, the police concluded that normal investigative procedures had been tried and failed, and that further efforts short of a wiretap would not succeed.

Read as a whole, this affidavit presents a complete statement as to why regular investigative techniques, though minimally successful, had largely failed. The recitation of procedures tried and failed is extensive. The investigators did not attempt to employ wiretaps routinely or as an early step in their investigation. Thus, we find that the affidavit complies with the plain meaning of I.C. § 18–6708(1)(c), and that the facts set forth are adequate to support the issuing judge's determination under I.C. § 18–6708(3)(c).

**D**

Appellants' final statutory argument is that the wiretap authorization was improperly extended for an additional thirty days even though the objective of the authorization had been achieved during the initial thirty-day period. Idaho Code Section 18–6708(6) provides:

(6) No order entered under this section may authorize the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty (30) days. Extensions of an order may be granted, but only upon application for an extension made in accordance with subsection (1) of this section and the court making the findings required by subsection (3) of this section. The periods of extension shall be no longer than the authorizing court deems necessary to achieve the purposes for which it was granted and in no event for longer than thirty (30) days for each extension. Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception un-

der this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty (30) days. We now must determine whether the thirty-day extension here was excessive.

The first period of electronic surveillance ran from September 17 to October 17, 1984. At that time, the state applied for and received the extension. The extension was granted because the issuing judge determined that it would permit the investigators to discover "places of operation, times and dates of transactions" which would "permit the seizure of the controlled substances being distributed." Nonetheless, appellants contend that the extension was improper because the investigators already had ascertained certain key information during the initial surveillance period. The officer in charge of the investigation admitted at the preliminary hearing that the suspected Twin Falls source had been identified before the wiretapping began and that Judy Thompson was specifically implicated after only two days of electronic surveillance. The officer also stated that each of the six appellants had been identified by the "middle" of October, though one of them had been temporarily misidentified.

■ All of this may be true and it may show that the appellants could have been prosecuted for conspiracy without an extended wiretap. But it does not demonstrate that the authorized objective of the wiretapping had been fully attained. The authorized objective was to seek information about actual places, dates and times of the drug transactions. The investigators sought this information in order to seize contraband as additional evidence. The officer in charge of the investigation stated during the preliminary hearing that such physical evidence had been lacking throughout the initial period of surveillance. His testimony is not controverted. Because the authorized objective had not been fully achieved prior to the expiration of the first wiretap, we conclude that the issuing judge acted appropriately in extending the wiretap for an additional thirty days.

### III

Appellants next contend that the evidence adduced at the preliminary hearing was insufficient to bind them over to the district court. The bulk of the evidence presented to the magistrate consisted of the tapes of the surveillance itself. The state also adduced proof that all of the defendants' voices had been positively matched to the voices on the tapes and that one of the defendants had been arrested outside ISCI in possession of marijuana.

■ Unfortunately, the appellants have failed to place any of the wiretap tapes in the record before us. Furthermore, although they raise this claim in the "Statement of Issues" in their brief, they fail to address it in the body of the brief. An appellant bears the burden of furnishing a record adequate to evaluate his claim of error. *State v. Torres*, 112 Idaho 801, 736 P.2d 853 (Ct.App.1987); *State v. Murinko*, 108 Idaho 872, 702 P.2d 910 (Ct.App.1985). Without a complete record, we simply are unable to review the magistrate's decision. Without listening to the tapes, we can intimate no view as to the sufficiency of the evidence. Consequently, we are constrained to dismiss this argument without further discussion.

### IV

Finally, the appellants attack the prosecutor's information, filed after the preliminary hearing. They argue that the information must be quashed because it fails to state an offense under I.C. § 37–2732(f), relating to conspiracy to violate the Uniform Controlled Substances Act. The appellants remind us that they stand accused only of conspiracy. No other substantive crimes have been alleged.

The appellants assert that the state must allege (and subsequently prove at trial) at least one overt act by a coconspirator in furtherance of the unlawful agreement. The trial judge held that proof of an overt act was unnecessary under I.C. § 37–2732(f). Accordingly, he denied the motion to dismiss. The state does not directly contest appellants' argument about

the necessity of alleging an overt act. Indeed, twenty-seven acts are set forth in the prosecutor's information, twenty-five of which are telephone calls. The state contends that these telephone conversations constitute overt acts. We will examine each side's position in turn.

### A

We first discuss the overt act requirement. At common law, conspiracy was defined as a combination between two or more persons formed for the purpose of doing an unlawful act or a lawful act by unlawful means. *Pettibone v. United States*, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419 (1893). *See generally* W.R. LAFAVE and W. SCOTT, JR., 2 SUBSTANTIVE CRIMINAL LAW § 6.4(a) (1986). The agreement itself was treated as the gravamen of the offense; no overt act was necessary for conviction. *R v. Kimberty and North*, 83 Eng.Rep. 297 (1662); *King v. Gill*, 106 Eng.Rep. 341 (1818). In the absence of a statute to the contrary, the common-law rule still controls. However, the majority of states now require proof of an overt act for most, if not all, types of conspiracies. Usually this predicate is contained in the jurisdiction's general penal code provisions. However, federal law, and the law in some states, has engrafted specific exceptions to the ordinary overt acts requirement. As a result, convictions for certain kinds of conspiracies require no proof of overt acts. Under federal law, one of those exceptions is conspiracy to violate the narcotics statutes.

18 U.S.C. § 371, the general federal conspiracy statute, requires proof of an overt act. It provides in pertinent part:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

However, a conspiracy to violate the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 846, does not require such proof:

Any person who attempts or conspires to commit any offense defined in this title is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

*See United States v. Bey*, 736 F.2d 891 (3d Cir.1984); *United States v. Bermudez*, 526 F.2d 89 (2d Cir.1975), *cert. denied*, 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976). *See generally* P. MARCUS, PROSECUTION AND DEFENSE OF CRIMINAL CONSPIRACY CASES § 2.08 (1985) (hereinafter MARCUS).

Within months of the adoption by Congress of the federal Act, the National Conference of Commissioners on Uniform State Laws drafted the Uniform Controlled Substances Act. The Uniform Act, which has been adopted by most states (including Idaho in 1971), was intended

to achieve uniformity between the laws of the several States and those of the Federal government. It has been designed to complement the new Federal narcotic and dangerous drug legislation and provide an interlocking trellis of Federal and State law to enable government at all levels to control more effectively the drug abuse problem.

UNIF.CONT.SUB.ACT, Commissioner's Prefatory Note, 9 U.L.A. 188 (1970).

As drafted, the Uniform Act contained no conspiracy section in its penalty provisions. Consequently, most states inserted conspiracy as a separate offense under their versions of the Act. In the Idaho Code, this is found in I.C. § 37-2732(f). In drafting this section, Idaho, like many other states, substantially tracked the language of the federal narcotics conspiracy statute. Section 37-2732(f) reads:

If two (2) or more persons conspire to commit any offense defined in this act, said persons shall be punishable by a fine or imprisonment, or both, which may not exceed the maximum punishment prescribed for the offense, the commission

of which was the object of the conspiracy.

Because of the parallel language, some state courts have construed their state statutes equivalently with their federal counterpart. Accordingly, these courts have held that no overt act is necessary to prove a conspiracy to violate the Uniform Act. *See, e.g., Apodaca v. State*, 627 P.2d 1023 (Wyo.1981). However, many other state courts considering the question have held to the contrary. *See, e.g., People v. Persinger*, 49 Ill.App.3d 116, 6 Ill.Dec. 950, 363 N.E.2d 897 (1977), *cert. denied*, 435 U.S. 917, 98 S.Ct. 1474, 55 L.Ed.2d 509 (1978); *Myers v. Sheriff, Clark County*, 94 Nev. 120, 576 P.2d 273 (1978); *State v. Hernandez*, 159 N.J.Super. 304, 387 A.2d 1242 (App.Div.1978), *affirmed*, 78 N.J. 541, 397 A.2d 328 (1979); *White v. State*, 582 P.2d 1334 (Okla.Crim.App.1978); *Commonwealth v. Herberg*, 306 Pa.Super. 245, 452 A.2d 536 (1982).[7]

This question has not been confronted directly by the appellate courts of Idaho. The trial judge opted to follow federal authority. This would have been a sound choice but for an additional legislative development in Idaho conspiracy law. For more than ninety years, from a time before statehood to 1978, Idaho criminal statutes had not required proof of overt acts in prosecutions for conspiracy. *See* Rev.Stat. § 6540 (1887); Comp.State § 8204 (1919); I.C.A. § 17–1027 (1932); I.C. § 18–1701 (1947). However, in 1978, seven years after the adoption of the Uniform Controlled Substances Act, the Idaho Legislature repealed former I.C. § 18–1701 and created a new section with the same number, explicitly adding an overt acts requirement:

If two (2) or more persons *combine or conspire to commit any crime or offense* proscribed by the laws of the state of Idaho, *and* one (1) or more of such persons does *any act to effect the object of the combination or conspiracy*, each shall be punishable upon conviction in the same manner and to the same extent as is provided under the laws of the state of Idaho for the punishment of the crime or offenses that each combined to commit. [Emphasis added.]

The language of the 1978 statute is clear. It applies to *all* crimes or offenses proscribed by the laws of this state. *See, e.g., State v. Gallatin*, 106 Idaho 564, 682 P.2d 105 (Ct.App.1984).

■ We acknowledge that some commentators have argued against requiring overt acts in prosecutions for serious ongoing conspiracies, such as those involving drug trafficking. *See* MARCUS § 2.08[1] n. 17. But we find the criticism unpersuasive. There is no cogent reason to make drug trafficking conspiracies an exception to the general law of conspiracy in Idaho. Moreover, where conflicting statutes create an ambiguity concerning the reach of the criminal law, the conflict must be resolved in favor of lenity. *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). Alternatively, where statutory intent is clear, a later statute written in comprehensive language will impliedly repeal an earlier, narrow statute. *Taylor v. Dept. of Fish, Wildlife and Parks*, 205 Mont. 85, 666 P.2d 1228 (1983); *State v. Reams*, 98 N.M. 372, 648 P.2d 1185 (Ct. App.1981), *affirmed in part, reversed in part*, 98 N.M. 215, 647 P.2d 417 (1982).

---

7. These state statutes are generally similar to I.C. § 37–2732(f). For example, the Oklahoma statute, Okla.Stat.Ann. tit. 63, § 2–408 (West 1984), provides:

> Any person who attempts, endeavors, or conspires to commit any offense defined in this act shall be subject to the penalty prescribed for the offense, the commission of which was the object of the endeavor or conspiracy.

New Jersey has gone farther, codifying the overt acts requirement under its general conspiracy statute with reference to the Uniform Controlled Substances Act:

> No person may be convicted of conspiracy to commit a crime other than a crime of the first or second degree or distribution or possession with intent to distribute a controlled dangerous substance as defined under the "New Jersey Controlled Dangerous Substances Act," P.L. 1970, c. 226 (C. 24:21–1 et seq.), unless an overt act in pursuance of such conspiracy is proved to have been done by him or by a person with whom he conspired.

N.J.Stat.Ann. § 2C:5–2(d) (1982).

*See also Ex parte Chiapetto*, 93 Cal.App. 2d 497, 209 P.2d 154 (1949).

Our analysis is grounded not only in these canons of statutory construction but also in sound policy considerations. An overt act requirement gives would-be participants in a conspiracy a chance to back out before harm is done. As Justice Harlan once stated:

> The function of the overt act in a conspiracy prosecution is simply to manifest "that the conspiracy is at work, ..." and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence.

*Yates v. United States*, 354 U.S. 298, 334, 77 S.Ct. 1064, 1085, 1 L.Ed.2d 1356 (1957) (footnote omitted). The overt act requirement also serves a practical purpose because the locus of the act establishes jurisdiction or venue for prosecution. For all these reasons, we conclude that the prosecution must allege and prove an overt act in order to obtain a conviction for conspiracy to violate I.C. § 37–2732(f).

### B

We now must determine whether the overt acts set forth in the state's information in this case are sufficient. As noted, the information sets forth twenty-seven overt acts. Twenty-five are telephone calls. The remaining two acts include a visit to the prison by one of the conspirators and the possession of marijuana by one of the other conspirators outside the prison.

All authorities agree that the overt act requirement is satisfied by slight evidence. MARCUS § 2.08[3]. The act in furtherance of the conspiracy need not itself be criminal. *Hyde v. United States*, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912). The act need be committed by only one member of the conspiracy. The act is then imputed to all other conspirators. MARCUS, *supra*. However, the agreement itself, or aspects of it, cannot satisfy the requirement. An agreement cannot be "in furtherance" of itself. *Id.*

Many courts have concluded that telephone calls can constitute overt acts under certain circumstances. *See, e.g., United States v. Strickland*, 493 F.2d 182 (5th Cir.), *cert. denied*, 419 U.S. 801, 95 S.Ct. 9, 42 L.Ed.2d 32 (1974); *Singer v. United States*, 208 F.2d 477 (6th Cir.1953); *Bartoli v. United States*, 192 F.2d 130 (4th Cir. 1951); *Smith v. United States*, 92 F.2d 460 (9th Cir.1937); *People v. Menache*, 98 A.D. 2d 335, 470 N.Y.S.2d 171 (1983). Generally, these courts have held that when the conversation is an act "independent of the agreement itself and tends to carry out the object of the conspiracy," it constitutes an overt act. *Id.* 470 N.Y.S.2d at 172. Conversations concerning particular drug transactions may fall into this category. *See United States v. Strickland, supra.*

It is self-evident, as a matter of law, that not all telephone calls automatically qualify as overt acts. Some may relate solely to expression of the agreement. However, even calls so limited may impart meaning to other acts. Here, we believe the telephone calls give meaning to the other acts of visiting the prison and possessing marijuana. The prosecutor's information, taken as a whole, contains sufficient allegations to satisfy the pleading requirement of an overt act. Accordingly, we uphold the district judge's refusal to dismiss the information, albeit for reasons different from those he stated.

In summary, the district court's order, denying the appellants' motion to suppress the wiretap evidence and to dismiss the information, is affirmed. The case is remanded for proceedings consistent with this opinion.

SWANSTROM, J., and McQUADE, J. Pro Tem., concur.