745 P.2d 1082

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Gerald Pat MARTIN, Defendant–Appellant.**

**No. 16488.**

Court of Appeals of Idaho.

Nov. 2, 1987.

Alan E. Trimming, Public Defender, Boise, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

Gerald "Pat" Martin stands convicted by an Ada County jury of conspiracy to deliver methamphetamine. On appeal, Martin presents two issues: (1) Did the police comply with a statutory requirement to pursue "other investigative techniques" prior to applying for a warrant authorizing a wiretap of his telephone? (2) Was the evidence sufficient to support the jury's verdict?

For reasons explained below, we answer both questions in the affirmative and we uphold the judgment of conviction.

Pat Martin was one of twenty-nine persons indicted on various charges related to a large-scale drug trafficking operation in southwestern Idaho. Before trial, Martin's case was severed and he was tried individually. The undisputed evidence indicated that the police became aware of the existence of a drug ring in May, 1984. At that time the owners of a small electronics shop complained that someone had made an illegal, although apparently inadvertent, connection to the shop's telephone line. Shop personnel frequently picked up the phone to make calls and were unable to do so because the line was in use. They overheard conversations that apparently related to narcotics transactions. The Department of Law Enforcement began an investigation. Officers discovered that the shop's telephone line had been intercepted as it ran through the premises of an adjoining leather store. The owner of the leather store had been suspected of involvement in drugs. The Department began to monitor his daily activities. The officers soon came to believe that a house at 2612 Edson Street in Boise, a location frequented by the leather store owner, was a central point for illegal distribution of methamphetamine. The house was placed under surveillance for six or seven days each week for almost two months.

The police also attempted to infiltrate the drug ring by using undercover agents and informants. They were unsuccessful. However, information obtained from confidential informants, anonymous tips and the surveillance strengthened the impression that the house on Edson Street was a locus of drug trafficking activity. In early September the police obtained a warrant to search the premises. The search yielded twenty-three grams of methamphetamine, some marijuana, packaging equipment, scales, drug paraphernalia, phone numbers, and ledgers recording drug transactions. After the search, the police obtained judi-cial authorization to place a pen register on the Edson Street telephone. The pen register monitored the phone for eleven days and tracked 717 calls. The propriety of installing the pen register is not an issue in this case.

Armed with information from all of these sources, the police then applied for and received court authorization to place a wiretap on the Edson Street telephone. Electronic surveillance was conducted from October 30 to November 16, 1984. Many drug-related conversations were recorded. They revealed an extensive, ongoing conspiracy to distribute methamphetamine and marijuana. Pat Martin was one of the persons whose conversations were intercepted. After Martin was indicted, he moved to suppress the wiretap evidence, contending that it had been obtained in violation of Idaho's electronic surveillance statutes, I.C. §§ 18–6701 to –6725. The district judge denied the motion. Martin was tried and convicted on evidence including the recorded conversations. This appeal followed.

## I

We turn first to the validity of the wiretap. Martin argues that the evidence obtained from the wiretap must be suppressed[1] because the state failed to comply with what is commonly called the "necessity" requirement—that is, the requirement to pursue "other investigative techniques" under I.C. § 18–6708(1)(c). We recently discussed the necessity requirement in *State v. Brown*, 113 Idaho 480, 745 P.2d 1101 (Ct.App.1987). There we noted that I.C. § 18–6708(1)(c) mandates that a wiretap application contain "[a] full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Section 18–6708(3)(c) contains parallel language, authorizing a court to issue the wiretap order only if the judge determines, among other things, that

1. The Idaho electronic surveillance statutes contain an exclusionary rule. Idaho Code § 18–6705 provides that no part of any inter-cepted communications may be received in evidence "if the disclosure of that information would be in violation of this chapter."

"[n]ormal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."

In reviewing a lower court's finding of necessity, we must make two determinations. First, we must decide whether the wiretap application and its supporting affidavit contain a "full and complete statement" as to whether other investigative methods were tried and failed or, if not, an explanation as to why alternative methods were not attempted. The affidavit, read in its entirety, must show that

> in the particular investigation normal investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time[, or w]here such techniques have not been so employed ... under the particular circumstances of the case the employment of such techniques "reasonably appear [sic] unlikely to succeed if tried or to be too dangerous."

*United States v. Martinez,* 588 F.2d 1227, 1232 (9th Cir.1978) (*quoting United States v. Spagnuolo,* 549 F.2d 705, 710 (9th Cir. 1977)). The second question on appellate review is whether the issuing judge's determination under I.C. § 18–6708(3)(c) is supported by the record.

■ Thus, our standard of review is bifurcated. We exercise free review on the question whether a "full and complete statement" was submitted to the issuing judge. *United States v. Brown,* 761 F.2d 1272 (9th Cir.1985). However, we exercise deferential review on the question whether an adequate showing of necessity has been made. As stated by one federal court applying nearly identical federal electronic surveillance statutes, the proper task on appeal is to determine only whether "the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Scibelli,* 549 F.2d 222, 226 (1st Cir.), *cert. denied,* 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). We interpret the word "minimally" to mean that the issuing judge must have had a substantial basis to conclude that the statutory requirements for a wiretap were satisfied. *Compare Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (magistrate must have substantial basis to conclude that probable cause exists to issue a search warrant).

■ We now apply these standards to the record in the present case. The affidavit submitted by the officer in charge of the investigation was twenty-five pages long. It tracked the investigation and listed in detail the various evidence-gathering methods attempted to date. These included surveillance, interviews with confidential and named informants, body bugs, the pen register and the search of the Edson Street residence. The officer then summarized what he had been able to determine based on these investigative procedures. He stated that the leather store owner was a major supplier of methamphetamine in the Boise area; that a resident of 2612 Edson Street was one of the methamphetamine dealers; and that several other named persons were engaged in the drug distribution scheme. The affiant then stated that he believed he had exhausted all other conventional means of

> locating the ultimate source of supply....; of locating unknown co-conspirators in the distribution scheme ...; of locating evidence that [the named individuals] are engaged in delivery of controlled substances; and of developing evidence that tends to prove the conspiracy between [the named individuals].

In the wiretap application accompanying the affidavit, the county prosecutor recited that, after reviewing the affidavit and discussing the investigation with the officer, he believed that "other investigative procedures have been tried and failed and that other investigation possibilities appear reasonably unlikely to succeed."

We conclude that the affidavit and application presented an adequate statement as to which regular investigative techniques had been tried and which had failed. In addition, the affidavit indicated what progress had been made prior to applying for the wiretap. Finally, the affidavit indicated the areas in which the investigation, using ordinary techniques, had not turned

up the evidence sought. In short, the affidavit presented a clear picture of successes and setbacks in the investigation to date.

▆ The fact that an investigation has been partially successful, using ordinary investigative techniques, does not preclude a finding of necessity for a wiretap. There may be other important investigative objectives which are unattainable except by resort to electronic surveillance. *See, e.g., United States v. Brone,* 792 F.2d 1504 (9th Cir.1986) (although undercover DEA agents had penetrated defendant's organization, wiretap was necessary to uncover the source of narcotics and details of the operation); *United States v. Johnson,* 645 F.2d 865 (10th Cir.), *cert. denied sub nom., Ableidinger v. United States,* 454 U.S. 866, 102 S.Ct. 329, 70 L.Ed.2d 168 (1981) (although target of wiretap was known to be involved in narcotics trafficking, wiretap was necessary to identify all members of conspiracy as well as its scope); *United States v. Sandoval,* 550 F.2d 427 (9th Cir. 1976) (wiretaps necessary to locate "satellites" in narcotics conspiracy). Here, we hold that the application and affidavit complied with the requirements of I.C. § 18–6708(1)(c).

▆ By parity of reasoning, we further hold that the facts set forth in the affidavit were adequate to support the issuing judge's determination of compliance with I.C. § 18–6708(3)(c). However, we are constrained to comment on the form of the findings by the issuing judge in his order. The order contained the following recital:

> IT APPEARING that the Court, having reviewed the application [has] found that it conforms in all respects to the requirements of Section 18–6708, Idaho Code Annotated, and Title 18 of the United States Code, Section 2518....

Such terse and conclusory language may satisfy the literal requirements of I.C. § 18–6708(3), but meaningful appellate review demands more from the issuing judge. The principal reason why we accord a deferential standard of review to a finding of necessity is that we do not wish to second-guess an issuing judge's factual findings. When the findings are not articulated, the rationale for appellate deference may be defeated. At minimum, the issuing judge should address each of the elements prescribed by I.C. § 18–6708(3).[2] This attention to each element facilitates appellate review and gives true meaning to the role of a neutral, detached judicial officer in the warrant-issuing process. The judge's role is diminished when findings are as cursory as those recited in the present order. However, we find no reversible error in this case because even if the record were examined *de novo,* with no deference to the implicit findings below, we still would conclude that the statutory elements have been satisfied.

## II

Martin's second argument is that the evidence is insufficient to sustain his conviction for conspiracy to violate the Uniform Controlled Substances Act. We find this contention to be without merit.

Appellate review of the sufficiency of the evidence is limited in scope. A judgment of conviction, entered upon a jury verdict, will not be set aside where there is substantial evidence upon which any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. Decker,* 108 Idaho 683, 701 P.2d 303 (Ct.App.1985). "[W]e are precluded from substituting our judgment for that of the jury as to the credibility of witnesses, the weight of the testimony, and the reasonable inferences to be drawn from

---

2. The federal courts require the issuing judge to make specific findings which at least track the language of the statute. *See, e.g., United States v. Curreri,* 363 F.Supp. 430 (D.Md.1973). The courts reason that such findings are sufficient for an appellate court to review because the specific factual underpinnings can be inferred from the affidavit. *See United States v. Martinez,* 588 F.2d 1227 (9th Cir.1978); *United*

States v. Tortorello, 480 F.2d 764 (2d Cir.) *cert. denied,* 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973); *United States v. Escandar,* 319 F.Supp. 295 (S.D.Fla.1970). Some state courts have also held that tracking the statutory language is sufficient. *See, e.g., State v. Chiarizio,* 8 Conn.App. 673, 514 A.2d 370 (1986); *Howard v. State,* 51 Md.App. 46, 442 A.2d 176 (1982).

the evidence." *State v. Campbell,* 104 Idaho 705, 718–19, 662 P.2d 1149, 1162–63 (Ct.App.1983). Furthermore, we view the evidence in the light most favorable to the respondent. *State v. Fenley,* 103 Idaho 199, 646 P.2d 441 (Ct.App.1982).

The essential elements of conspiracy are the existence of an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense. *United States v. Becker,* 720 F.2d 1033 (9th Cir.1983); *United States v. Oropeza,* 564 F.2d 316 (9th Cir.1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978); *State v. Garcia,* 102 Idaho 378, 630 P.2d 665 (1981). The agreement need not be proven directly, but may be inferred from circumstantial evidence. *United States v. Becker, supra.* Once a conspiracy is shown, there must be evidence linking the defendant with it. *United States v. Oropeza, supra.* The critical question in most conspiracy cases, as in this one, is whether the record contains proof of a connection between the defendant and the conspiracy. *United States v. Huber,* 772 F.2d 585 (9th Cir. 1985).

We have reviewed the evidence under these standards. The state's evidence shows that Martin's wife had been heavily involved in distributing methamphetamine for one of the residents of the Edson Street house. In fact, Martin's wife pled guilty to a charge of conspiracy to deliver methamphetamine. Martin accompanied his wife on several occasions to Edson Street, either to pick up narcotics or to make payments. At trial an Edson Street resident testified that Martin had agreed that his wife would sell methamphetamine. The resident also stated that Martin encouraged and assisted his wife in her activities. Furthermore, at least one recorded conversation revealed that Martin and his wife had requested an eighth of an ounce of methamphetamine— an amount significantly more than necessary for personal use. Finally, during a search of Martin's residence, police found methamphetamine. On this evidence, the jury reasonably could infer the existence of a conspiracy to deliver methamphetamine and could infer a connection between Martin and the conspiracy.

Accordingly, the judgment of conviction is affirmed.

SWANSTROM, J., and McQUADE, J., pro tem, concur.