**STATE**

v.

**Barry R. McGOFF et al.**

85–326–C.A.

Supreme Court of Rhode Island.

Oct. 29, 1986.

Arlene Violet, Atty. Gen., John Migliaccio, Asst. Atty. Gen., Thomas Dickinson, Sp. Asst. Atty. Gen., for plaintiff.

Kirk Griffin, Boston, Mass., John T. Sheehan, Jr., Sheehan & Burke, Joseph T. Houlihan, Kathleen Managhan, Corcoran, Peckham & Hayes, Newport, for defendants.

## OPINION

MURRAY, Justice.

The defendants Barry R. McGoff and David W. Haddad were convicted in a jury-waived trial of possession with intent to deliver cocaine and of conspiracy to possess with intent to deliver cocaine. Each was sentenced to the Adult Correctional Institutions for twenty years, twelve years suspended; placed on probation for twelve years and fined $20,000. The defendants appeal the denial of their pretrial joint motions to suppress evidence and to have a hearing on the veracity of affidavits that were submitted to support the application for a wiretap.

In the fall of 1983 State Police Detective Brian R. Andrews began a drug investigation of the activities of defendants and others. The investigation initiated with information provided by a confidential informant and with routine police inquiry. It continued for well over a year.

Between December 7, 1983 and May 30, 1984, three subpoenas duces tecum were served on New England Telephone (the telephone company) requesting toll-record information of the telephone number for the Newport County residence of defendant McGoff. Though McGoff lived alone, the telephone at his residence was listed under the name of Joyce McGuire. The telephone company complied with the subpoenas and sent the toll records to Detective Andrews.

On June 28, 1984, Detective Andrews submitted an application and supporting affidavit for an order authorizing the installation of a pen-register device on the telephone at McGoff's residence. A pen register is a device used to determine the telephone numbers dialed from the telephone to which the device is attached. It does not intercept or record the content of telephone conversations. The application, based on information Detective Andrews had received from the informant, his investigation, and the subpoenas, was allowed and the order implemented.

On August 24, 1984, the Attorney General submitted an application to intercept wire communications (wiretap) supported by two affidavits of Detective Andrews which included information that had been continuously supplied by the informant through August 13, 1984, information obtained through investigation and surveillance, and information derived from the use of the pen register. The application was allowed and the order implemented.

Information obtained from the wiretap was used to prepare an affidavit in support of an application for conventional search warrants. The warrants were authorized and executed September 2, 1984, and various vehicles, residences and places of business in Newport County were searched. Evidence seized was used to convict defendants at trial.

## I

### THE GRAND JURY SUBPOENAS DUCES TECUM

The defendants first contend that the grand jury subpoenas duces tecum, requiring the telephone company to turn over to the state records of toll calls made from McGoff's residence, were unauthorized by the grand jury, or, alternatively, were improperly issued by the grand jury. Thus, defendants' reasonable privacy interests in the telephone records were violated.

Because the toll-record information derived from these subpoenas was used by the state to support its request to install a pen-register device—information derived from which was then used to secure an order to place a wiretap on the McGoff-residence telephone—and because evidence derived from the wiretap was later introduced at trial against them, defendants claim the trial court erred in not granting their joint motion to suppress this evidence as being tainted "fruit of the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The trial court denied defendants' motion to suppress any product of the sub-

poenas on the ground that defendants lacked standing to contest subpoenas duces tecum issued to the telephone company and requiring it to turn over ordinary business records, without first showing that such records were recognized as confidential under the law. Absent such a showing, the court ruled, defendants had no reasonable expectation of privacy in the telephone company's business records and thus could not protest their transfer. We agree.

█ The exclusionary rule protects the individual's reasonable expectation of privacy by prohibiting the use, at trial, of evidence obtained in violation of a person's constitutional rights. *State v. Timms*, 505 A.2d 1132, 1137 (R.I.1986). When no reasonable privacy interest has been unlawfully invaded, the introduction of evidence seized is not prevented. *Id.*

█ In determining whether a defendant has standing to invoke the exclusionary rule, we must engage the substantive question of whether the challenged search or seizure violated the constitutional rights of that defendant. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633, 641 (1980). A defendant has no standing to invoke the rule because of the infringement of a third party's rights. *Id.*

In *Rawlings*, the defendant moved to suppress controlled substances retrieved from a purse owned by and in the possession of another during the search of a house the defendant was visiting. The Court held that since the defendant had no reasonable expectation of privacy in a purse belonging to another, the defendant could not challenge the legality of the purse's search even though he claimed ownership of the drugs found therein.[1] *Id.* at 106, 100 S.Ct. at 2562, 65 L.Ed.2d at 641.

In *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), the defendant moved to suppress copies of checks and other bank records obtained by the serving of allegedly defective subpoenas duces tecums on two banks at which he had accounts. The defendant argued that he had a Fourth Amendment interest in the records kept by the banks because the records were personal and made available to the banks for a limited purpose only. The Court, in rejecting the defendant's contention, said "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *Id.* at 443, 96 S.Ct. at 1624, 48 L.Ed.2d at 79. The Court concluded that because no Fourth Amendment interests of the defendant were implicated, the case was "governed by the general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant, even if a criminal prosecution is contemplated at the time the subpoena is issued." *Id.* at 444, 96 S.Ct. at 1624, 48 L.Ed.2d at 79–80.

As for subpoenas issued to the telephone company, this case is governed by the same general rule.[2]

---

1. Here, not only were the subpoenaed records in the possession of the telephone company, the telephone itself was listed to neither defendant but rather to one Joyce McGuire. This is not to say that had the telephone been listed under defendants' names their case would necessarily be stronger, for "[w]hile property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, [it is] neither the beginning nor the end of [the] inquiry." *United States v. Salvucci*, 448 U.S. 83, 91, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619, 628 (1980).

2. We need not address the question of whether art. I, sec. 6, of the Rhode Island Constitution provides greater protection (than does the Fourth Amendment) for an individual's privacy interest in toll records belonging to the phone company. As is discussed *infra*, Detective Andrews's affidavits supporting the request for the wiretap were sufficient, outside of any information derived from the subpoenas or the pen register, in providing probable cause to issue the wiretap.

## II

### THE PEN REGISTER

The defendants next contend that the installation of a pen register must be preceded by judicial authorization supported by probable cause. Since the application for the pen register fell short of establishing probable cause, say defendants, the information derived from the pen register should not have been used to support the later application for the wiretap.

The trial court did find that Detective Andrews's affidavit supporting the application for the pen register fell short of establishing probable cause, but ruled that no warrant was needed to install the pen register because defendants had no reasonable expectation of privacy in the numbers dialed from the telephone at McGoff's residence.

The defendants concede that the Federal Constitution does not require that the installation of a pen register be preceded by a showing of probable cause. In *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), the Court held that because an individual has no reasonable expectation of privacy in the numbers he or she dials, the use of a pen register is not a "search," and does not require a warrant, under the Fourth Amendment. The defendants, however, urge this court to provide stricter safeguards against the use of pen registers under art. I, sec. 6, of the Rhode Island Constitution.[3]

This court has the power and the right to provide Rhode Island citizens with stricter safeguards against governmental intrusions than are provided generally under the Fourth Amendment. *State v. Benoit*, 417 A.2d 895, 899 (R.I.1980). Nonetheless, since we recognize the Fourth Amendment to be an indispensable guardian of fundamental rights which, in most contexts, provides ample protection against unreasonable searches and seizures, the decision to

depart from its standards of protection must be made guardedly. *Id.* Further, we should not entertain constitutional questions in advance of the strictest necessity, particularly where the case may be decided on other grounds. *State v. Berberian*, 80 R.I. 444, 445, 98 A.2d 270, 271 (1953).

■ In this case we need not reach the question of whether the Rhode Island Constitution provides stricter safeguards against the use of pen registers. Any information acquired through the use of the pen register and included in Detective Andrews's affidavits in support of the application for the wiretap was mere surplusage and was not needed to establish probable cause. The trial court, in reviewing the affidavit at the motion hearing, struck out all references to any information derived from the use of the pen register (as well as striking out everything else the defense complained of) and still found, on the basis of the information provided by the confidential informant, that there was sufficient information to support the order for the wiretap. We agree.

Probable cause is statutorily and constitutionally required for a wiretap order to issue. Statutorily, G.L.1956 (1981 Reenactment) § 12–5.1–4 requires a judicial determination of probable cause before a wiretap order can issue. Section 12–5.1–2(d) states that applications for such an order may be based, in whole or in part, on the statements of persons other than the applicant, as long as the source of the information is described and the application "contain[s] facts establishing the existence and reliability of the informant, or the reliability of the information supplied by him. The application must also state, so far as possible, the basis of the informant's knowledge or belief."

Constitutionally, in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Court set forth the standard by which an application that is based on state-

---

**3.** McGoff is the only one of the two defendants who could conceivably have standing to address this issue. Haddad obviously has no reasonable expectation of privacy in numbers dialed from the McGoff-residence telephone.

ments by an informant should be reviewed. An appellate court must "conscientiously review the sufficiency of affidavits on which warrants are issued" while considering the totality of the circumstances set forth in the affidavit. *Id.* at 239, 103 S.Ct. at 2333, 76 L.Ed.2d at 549. The reviewing court's duty is to ensure that the issuing justice had a "substantial basis" for concluding that "given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there [was] a fair probability that contraband or evidence of a crime [would] be found in a particular place." *Id.* at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.

█ In the present case, counsel for defendants conceded at oral argument that the reliability of the informant in Detective Andrews's affidavits was not contested. The affidavits clearly set forth that the informant had always provided accurate information in the past and that such information had led to the arrests of eight individuals, three of whom were convicted, and to the seizure of 1,355 pounds of marijuana. Hence, the reliability requirement of § 12–5.1–2(d) is satisfied.

The basis of the informant's knowledge was also set forth in the affidavits. After giving Detective Andrews both defendants' names, as well as McGoff's address, marital status, and telephone number, the informant said that he regularly purchased cocaine and marijuana from McGoff by telephoning him and then picking up the drugs from McGoff's residence or mailbox. The informant directed Andrews to McGoff's secluded residence and pointed it out. He provided Andrews with descriptions of McGoff's vehicles, with names of those with whom McGoff dealt drugs, and with names of businesses owned by both defendants. Detective Andrews then began to independently investigate the defendants' illegal activities. Among other things, the investigation included checks with the Division of Motor Vehicles and other agencies, as well as surveillance of one of defend-

ants' businesses where McGoff was, on separate occasions, observed by the police exchanging a paper bag for money and overheard telling an unknown male that he had a "sample" with him, that it was "good stuff," and that if the male liked what he saw, McGoff could provide "large amounts of the same quality." (The informant later told Andrews that McGoff sold ounces of cocaine for $1,900.) Andrews learned that several of the persons with whom the informant said McGoff dealt had prior drug-arrest records, and that defendant Haddad had served time for conspiracy to sell cocaine.

In light of the foregoing, we agree with the trial court that there was a substantial basis, independent of the information derived from the use of the pen register, for the issuing justice to determine from the affidavits that there was a "fair probability" that illegal drug transactions would be discussed over the McGoff-residence telephone. And because the informant's reliability was established, the basis of his knowledge stated in the affidavits, and an independent, corroborating investigation conducted, the requirements of § 12–5.1–4 and of *Gates* are satisfied. The trial court properly denied defendants' motion to suppress.

## III

## THE FRANKS HEARING

The defendants' last contention is that the trial court erred in not granting them a hearing, under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), in which they might have proven that Detective Andrews made deliberate or reckless misstatements in his affidavits submitted to support the application for the wiretap.

In *Franks* the Court said that affidavits supporting search warrants are to be presumed valid. *Id.* at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682. To mandate an evidentiary hearing to challenge an affidavit, the challenger must allege deliberate or reckless falsehoods on the part of the affiant,

and the allegations must be accompanied by an offer of proof. Allegations of negligence or innocent mistake are insufficient. *Id.*

Here, defendants did allege that Detective Andrews deliberately or recklessly provided false information in his affidavit. Their only offer of proof, however, was an affidavit submitted by defendant McGoff which denies that some of the events related by the informant to Detective Andrews ever happened. At best it indicates that the *informant* may have provided Andrews with misinformation. Nowhere is there any proof that *Andrews himself* deliberately falsified information or that he should have presumed the informant, who had always been reliable in the past, to have been lying.

Because defendants' offer of proof was simply self-serving, and because it does not appear to have been supported by anything more than a desire to cross-examine Detective Andrews, it was within the discretion of the trial court not to grant defendants' motion.

The defendants' other contentions are without merit.

For these reasons, the defendants' appeal is denied and dismissed, the judgment of the trial court is affirmed, and the papers are remanded to the Superior Court.