718 A.2d 265

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Raphieal Lamon HAWKINS, Appellant.**

Supreme Court of Pennsylvania.

Argued March 11, 1998.

Decided Aug. 19, 1998.

Ralph D. Karsh, Pittsburgh, for Raphieal Lamon Hawkins.

Claire C. Capristo, Robert A. Willig, Pittsburgh, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

SAYLOR, Justice.

Appellant Raphieal Lamon Hawkins ("Hawkins") claims that the Superior Court erred in affirming the trial court's denial of his motion to suppress drugs seized from his codefendant.

On April 22, 1995, Officer Larry Scirotto of the City of Pittsburgh Police Department was on foot patrol in an area known for drug activity. While in a restaurant on Federal Street, Officer Scirotto observed Hawkins and another individual, Regis Hankowitz ("Hankowitz"), walking in close proximity. When Hawkins reached an intersection, he stopped, scanned the cross-streets, then returned to speak with Hankowitz. As the men conversed at a distance of approximately 35 to 50 feet from Officer Scirotto's position, Hawkins reached toward his mouth, produced several objects and displayed

them to Hankowitz. After looking at the objects, Hankowitz placed them into his own mouth. Hankowitz then handed currency to Hawkins, after which the men parted company.

Immediately after the transaction, Officer Scirotto apprehended Hankowitz and requested that he remove the objects from his mouth. When Hankowitz refused, Officer Scirotto applied pressure to Hankowitz's throat to prevent him from swallowing. Hankowitz then spit out three balloons containing a total of .11 grams of heroin. Another officer apprehended and searched Hawkins, confiscating $93.00 in cash. Hawkins was arrested and charged with unlawful possession of a controlled substance, possession with intent to deliver a controlled substance, and unlawful delivery of a controlled substance. 35 P.S. § 780–113(a)(16), (30).

Prior to trial, Hawkins filed a motion to suppress the currency seized from him, as well as the heroin taken from Hankowitz. At the suppression hearing, Officer Scirotto described his observations and actions, including the transfer of the drugs from Hawkins and the subsequent seizure from Hankowitz. Hawkins offered no testimony or other evidence. At the conclusion of the hearing, the trial court ruled that the currency and associated testimony would not be allowed into evidence at trial, as the Commonwealth failed to present testimony from the officer who conducted the search of and seizure from Hawkins. The court declined, however, to suppress evidence related to the heroin seized from Hankowitz.

After a jury trial, Hawkins was convicted on all three counts. At sentencing, the trial court merged the offenses and imposed a term of incarceration of 16 to 32 months.

On appeal, the Superior Court affirmed. The Superior Court found that, as a party charged with a possessory offense, Hawkins had automatic standing to seek suppression of the evidence related to the seizure from Hankowitz. However, the court reasoned that Hawkins' abandonment of the heroin, together with his failure to establish a reasonable expectation of privacy in the contraband once he transferred it to Hankowitz, was fatal to his claim.

80

Hawkins asserts that this was error. He argues that the merits of his appeal should not have been decided upon privacy grounds once his standing was acknowledged. Alternatively, Hawkins argues that criminal defendants, as a matter of state constitutional jurisprudence, should be able to vicariously assert privacy interests belonging to others in order to challenge allegedly intrusive police conduct.

 The concept of standing in a criminal search and seizure context empowers a defendant to assert a constitutional violation and thus seek to exclude or suppress the government's evidence pursuant to the exclusionary rules under the Fourth Amendment of the United States Constitution or Article 1, Section 8 of the Pennsylvania Constitution. *See generally Commonwealth v. Price*, 543 Pa. 403, 411–12, 672 A.2d 280, 284 (1996); *Commonwealth v. Peterson*, 535 Pa. 492, 497, 636 A.2d 615, 617 (1993); *Sprague v. Casey*, 520 Pa. 38, 43, 550 A.2d 184, 187 (1988). The traditional formulation for standing requires a defendant to demonstrate one of the following personal interests:

(1) his presence on the premises at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged include[s] as an essential element of the prosecution's case, the element of possession at the time of the contested search and seizure; or (4) a proprietary or possessory interest in the searched premises.

*Commonwealth v. Peterkin*, 511 Pa. 299, 309, 513 A.2d 373, 378 (1986) (citing *Commonwealth v. Treftz*, 465 Pa. 614, 621–22, 351 A.2d 265, 268, *cert. denied*, 426 U.S. 940, 96 S.Ct. 2658, 49 L.Ed.2d 392 (1976)), *cert. denied*, 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1987). This Court has accorded standing automatically, with no preliminary showing of a proprietary or possessory interest by the defendant, in the third of these circumstances, namely, where possession at the time of the contested search and seizure is an essential element of the prosecution's case. *See Peterkin*, 511 Pa. at 309, 513 A.2d at 378; *Treftz*, 465 Pa. at 622 & n. 8, 351 A.2d at 268 & n. 8; *see generally Peterson*, 535 Pa. at 497, 636 A.2d at 617.

This doctrine of automatic standing has its genesis in the decisions of the United States Supreme Court. *See Jones v. United States*, 362 U.S. 257, 264, 80 S.Ct. 725, 732–33, 4 L.Ed.2d 697 (1960), *cited in Commonwealth v. Weeden*, 457 Pa. 436, 449, 322 A.2d 343, 349–51 (1974), *cert. denied*, 420 U.S. 937, 95 S.Ct. 1147, 43 L.Ed.2d 414 (1975). As a matter of Fourth Amendment jurisprudence, however, the United States Supreme Court has abandoned the construct in favor of a requirement that a defendant establish a legitimate expectation of privacy in the invaded place as a predicate to standing. *See United States v. Salvucci*, 448 U.S. 83, 85, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619 (1980).

While this Court has stated that automatic standing maintains continued vitality under Article 1, Section 8 of the Pennsylvania Constitution, *see Commonwealth v. Sell*, 504 Pa. 46, 66–68, 470 A.2d 457, 468–69 (1983); *see also Peterson*, 535 Pa. at 497, 636 A.2d at 617, these decisions have recognized that the essential effect is to entitle a defendant to an adjudication of the merits of a suppression motion. *See id.* at 497, 636 A.2d at 617. In order to prevail on such a motion, however, a defendant is required to separately demonstrate a personal privacy interest in the area searched or effects seized, and that such interest was "actual, societally sanctioned as reasonable, and justifiable." *Peterson*, 535 at 497, 636 A.2d at 617.[1] Such a legitimate expectation of privacy is absent where an owner or possessor meaningfully abdicates

---

1. A legitimate expectation of privacy is present when there is both a subjective privacy expectation coupled with objective reasonableness. *See Commonwealth v. Brundidge*, 533 Pa. 167, 173, 620 A.2d 1115, 1118 (1993). This Court has recognized that:

 [a]n individual's *effects and possessions* are constitutionally protected from unreasonable search and seizure as well as his person. U.S. Const.Amend. IV, Pa. Const. art. 1, § 8. This protection does not depend on the physical presence or physical absence of the individual owner. So long as a person seeks to preserve his effects as private, even if they are accessible to ... others, they are constitutionally protected. Stated differently, a person must maintain the privacy of his *possessions* in such a fashion that his expectations of freedom from intrusion are recognized as reasonable.

 *Sell*, 504 Pa. at 67, 470 A.2d at 468–69 (quoting *Commonwealth v. White*, 459 Pa. 84, 89–90, 327 A.2d 40, 42 (1974), *cert. denied*, 421 U.S. 971, 95 S.Ct. 1967, 44 L.Ed.2d 461 (1975)) (emphasis in original).

his control, ownership or possessory interest. *Sell,* 504 at 67, 470 A.2d at 469.

■ In this case, while acknowledging his initial standing to seek suppression, the Superior Court correctly determined that Hawkins abandoned any personal privacy interest upon transferring the contraband to Hankowitz.[2] Moreover, Hawkins simply cannot demonstrate, and it would be frivolous to assert, an expectation of privacy in the situs from which the contraband was seized, namely, the mouth of his codefendant. Even if a subjective expectation could be claimed, such an expectation would not be objectively reasonable. *See generally Commonwealth v. Mickens,* 409 Pa.Super. 266, 597 A.2d 1196 (1991) (finding that a defendant had no reasonable expectation of privacy following drug delivery); *Commonwealth v. Bulling,* 331 Pa.Super. 84, 480 A.2d 254 (1984) (finding that, by selling heroin, the defendant relinquished his possessory interest, and, correspondingly, the right to object to the seizure).[3]

Since Hawkins lacked a legitimate expectation of privacy, his suppression motion was properly denied.

■ Finally, Hawkins argues that, notwithstanding the absence of a personal privacy interest, criminal defendants

2. In fact, it is questionable whether Hawkins possessed automatic standing in the first instance. This is so because Hawkins was not charged with an offense that included as an essential element possession at the time of the contested seizure. *See Peterkin,* 511 Pa. at 309, 513 A.2d at 378; *Treftz,* 465 Pa. at 621–22, 351 A.2d at 268; *cf. Brown v. United States,* 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973). Rather, the charged offenses were of possession prior to the time of the search of Hawkins' codefendant. This is clear from the fact that the Commonwealth contended throughout that Hankowitz purchased the heroin prior to the search, thereby terminating Hawkins' possession and control over the contraband. As Hawkins' suppression motion lacks a separate essential element, *see infra,* we need not devote further discussion to the standing inquiry in this case.

3. Rather, Hawkins couches his argument on the privacy issue in terms of waiver, contending that the Commonwealth's focus upon standing essentially relieved him of the requirement to establish a personal privacy interest. Since, however, our cases place the burden squarely upon the defendant seeking suppression to establish a legitimate expectation of privacy as an essential element of his case, waiver simply is not an issue here.

should be permitted to vicariously assert the privacy interests of others in order to dissuade intentional, intrusive police conduct. This concept of derivative standing would involve an extension of the exclusionary rule under Article 1, Section 8 to all unreasonable government intrusions, regardless of whether the intrusion affects the personal privacy rights of the defendant.

▉ Preliminarily, we note that the United States Supreme Court has declined to apply the federal exclusionary rule to constitutional violations that are not personal to the defendant.[4] *See Jones,* 362 U.S. at 261, 80 S.Ct. at 731 (stating that "[i]n order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else"); *see also Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *Rakas,* 439 U.S. at 133–34, 99 S.Ct. at 425. When asked to decide whether our state Constitution provides greater privileges and protections than the United States Constitution, we evaluate the request in light of the following factors: 1) the text of the Pennsylvania constitutional provision; 2) the history of the provision, including Pennsylvania case law; 3) related case law from other states; and 4) policy considerations,

---

**4.** The exclusionary rule under the Fourth Amendment, like the rule under Article 1, Section 8, provides a remedy to protect the rights created by the constitution. *See Commonwealth v. Edmunds,* 526 Pa. 374, 395–96 n. 10, 586 A.2d 887, 898 n. 10 (1991). However, the Fourth Amendment's exclusionary rule has been construed by the United States Supreme Court as serving solely a deterrent purpose, *United States v. Leon,* 468 U.S. 897, 916, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677 (1984), whereas the exclusionary rule under Article 1, Section 8 has been interpreted by this Court to serve the purposes of safeguarding privacy and ensuring that warrants shall be issued only upon probable cause. *Id.* at 389, 586 A.2d at 899. Nevertheless, the deterrent purpose that underlies the Fourth Amendment's exclusionary rule has been deemed an insufficient basis for suppression in the context of vicarious challenges to unlawfully seized evidence. *See Rakas v. Illinois,* 439 U.S. 128, 137–38, 99 S.Ct. 421, 427, 58 L.Ed.2d 387 (1978); *Alderman v. United States,* 394 U.S. 165, 174–75, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969).

including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence. *Commonwealth v. Edmunds,* 526 Pa. 374, 390, 586 A.2d 887, 895 (1991).

Article 1, Section 8 provides:

**Security from Searches and Seizures**

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Article 1, Section 8 is similar in locution to the Fourth Amendment.[5] Neither text suggests that the rights protected thereby are other than personal.

The polestar of the expanded protection afforded by Article 1, Section 8, which distinguishes it from its federal counterpart, is its emphasis upon personal privacy interests. *See Edmunds,* 526 Pa. at 394, 586 A.2d at 897; *White,* 459 Pa. at 88, 327 A.2d at 42. In keeping with the historical intention of Article 1, Section 8, this Court has repeatedly refused to recognize the vicarious assertion of constitutional rights. *See, e.g., In Re: Search Warrant B–21778,* 513 Pa. 429, 439, 521 A.2d 422, 427 (1987); *cf. Commonwealth v. Brown,* 462 Pa. 578, 342 A.2d 84 (1975); *Commonwealth v. Stafford,* 450 Pa. 252, 299 A.2d 590, *cert. denied,* 412 U.S. 943, 93 S.Ct. 2775, 37 L.Ed.2d 404 (1973); *Commonwealth v. Butler,* 448 Pa. 128, 291 A.2d 89 (1972).

This Court's interpretation of Article 1, Section 8 as establishing a personal right is consistent with the interpretation other appellate courts have given similar provisions of their

**5.** The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing a place to be searched, and the persons or things to be seized.

states' constitutions. Moreover, numerous states have refused to recognize the vicarious assertion of constitutional rights.[6]

Finally, in consistently declining to recognize derivative standing, this Court has spoken directly to the policy considerations underlying Article 1, Section 8:

The fourth amendment to the Constitution of the United States guarantees that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." To the same effect is Pa. Const. art. I, § 8, P.S. These rights are personal in nature. "There is no necessity to exclude evidence against one [person] in order to protect the rights of another. No rights of the victim of an illegal search are at stake when the evidence is offered against some other party." In order to obtain standing to challenge the legality

6. *See, e.g., In Re: Lance W.*, 37 Cal.3d 873, 210 Cal.Rptr. 631, 694 P.2d 744 (1985) (finding that a defendant lacks standing under the California Constitution to challenge the introduction of evidence seized in violation of the rights of a third person); *State v. Hill*, 237 Conn. 81, 675 A.2d 866 (1996) (employing the federal framework for standing); *State v. Brown*, 113 Idaho 480, 745 P.2d 1101 (App.1987) (search must violate defendant's own constitutional rights); *Commonwealth v. Scardamaglia*, 410 Mass. 375, 573 N.E.2d 5 (1991) (declining to extend target standing under the state constitution, but leaving open whether such standing may be appropriate in situations involving particularly egregious police conduct); *State v. Nichols*, 628 S.W.2d 732 (Mo.App. 1982) (employing the federal framework for standing under Missouri Constitution); *State v. Benjamin*, 417 N.W.2d 838 (N.D.1988) (declining to permit target standing under the North Dakota Constitution); *State v. Mollica*, 114 N.J. 329, 554 A.2d 1315 (1989) (noting that automatic standing does not permit a defendant to challenge prior or antecedent state action directed against another person); *State v. Fernandez*, 113 N.H. 5, 300 A.2d 55 (1973) (defendant cannot complain about the use of evidence that was not obtained in violation of her rights); *People v. Tejada*, 81 N.Y.2d 861, 597 N.Y.S.2d 626, 613 N.E.2d 532 (1993) (defendant must establish that he himself was the victim of an invasion of privacy); *State v. Greenwood*, 301 N.C. 705, 273 S.E.2d 438 (1981) (immunity from unreasonable searches and seizures is a privilege personal to those whose rights have been infringed); *State v. McGoff*, 517 A.2d 232 (R.I.1986) (employing the federal framework for standing in determining whether the state constitution provides greater privacy protection). In those instances where a derivative privacy right has been recognized, the right has been specifically set forth in the state's Constitution, *see, e.g.,* Lou. Const. art. 1 § 5, or limited to gross or shocking misconduct or deliberate constitutional violations. *See, e.g., Waring v. State*, 670 P.2d 357, 363 (Alaska 1983).

of the search, [a defendant] must establish that he, rather than [another], was the victim of an invasion of privacy. *White,* 459 Pa. at 88–89, 327 A.2d at 42 (citations omitted); *cf. Alderman,* 394 U.S. at 174–75, 89 S.Ct. at 967 (stating that "we are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth"). Subsequent decisions have maintained the focus of the exclusionary rule under Article 1, Section 8 upon personal privacy interests, and preserved the requirement that a defendant must establish a legitimate expectation of privacy in order to avail himself of the exclusionary rule.[7] *See, e.g., Sell,* 504 Pa. at 67, 470 A.2d at 469; *Peterson,* 535 Pa. at 498; 636 A.2d at 618.

In sum, Hawkins lacked a legitimate privacy expectation necessary to his claim for relief. Accordingly, the order of the Superior Court is affirmed.

---

7. Notably, our rules of criminal procedure, following this logic, are crafted to address violations that are personal in nature rather than vicarious. *See, e.g.,* Pa.R.Crim.P. 323(a) (permitting a motion to suppress evidence "alleged to have been obtained in violation of the defendant's rights").