J-A09007-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| CHARLES BUSSEY, | |
| Appellee | No. 1039 EDA 2013 |

Appeal from the Order March 11, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002095-2012

BEFORE: BOWES, OTT, and JENKINS, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 16, 2014**

The Commonwealth appeals from the order entered March 11, 2013, granting Appellee's motion to suppress. After careful review, we affirm.

Pennsylvania State Trooper Tyron Bradford was on patrol in a marked vehicle in Philadelphia on January 26, 2012. At approximately 4:45 p.m., Trooper Bradford observed a car run a red light. Accordingly, the trooper effectuated a traffic stop. While radioing in the traffic stop, Trooper Bradford noticed that the four occupants inside the vehicle were moving. Specifically, he witnessed two individuals in the front seat make furtive movements toward the glove compartment and the two backseat passengers repeatedly turned and looked in his direction. Trooper Bradford remained in his vehicle for approximately five minutes before approaching. The trooper walked to the passenger side of the vehicle. After a window was lowered,

Trooper Bradford detected the smell of marijuana. Trooper Bradford then returned to his car and called for backup. Once an additional officer arrived at the scene, Trooper Bradford removed the occupants of the car one at a time. After removing each individual, Trooper Bradford conducted a brief frisk and handcuffed each individual before placing them in the rear of his patrol car. One of the individuals admitted to having a small amount of marijuana in his jacket.

Trooper Bradford then returned to the stopped vehicle. He lifted up the rear seat of the car and located a .22 caliber handgun. As a result of this discovery, the trooper placed the vehicle's occupants under arrest. Appellee was the rear seat passenger. The gun was retrieved from the area under his seat.

Appellee filed a motion to suppress the weapon. Accordingly, the court conducted a suppression hearing. Appellee did not testify, and the only testimony introduced was that of Trooper Bradford. In support of his suppression motion, Appellee argued that his movement in the car amounted to nothing but mere nervousness, and that the trooper did not have reasonable suspicion to conduct a search. In addition, Appellee asserted that the trooper's actions of removing him from the car, frisking him, placing him in handcuffs and then putting him in the rear of the trooper's police car, constituted an illegal arrest. The Commonwealth rejoined that Trooper Bradford had reasonable suspicion to search the car

based on the furtive movements of the individuals, the smell of marijuana, and because the driver did not have a valid driver's license. It maintained that the trooper did not arrest Appellee and that the individuals were going to be allowed to return to the car. The Commonwealth did not allege that Appellee did not have a reasonable expectation of privacy. The suppression court concluded immediately following the hearing that the vehicle search was illegal because no exigent circumstances existed.

The Commonwealth sought reconsideration and, for the first time, argued that Appellee failed to establish a reasonable expectation of privacy in the area searched. The court declined to reconsider the matter. This timely appeal ensued. The suppression court directed the Commonwealth to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth complied, and the court authored its opinion. Therein, it found that Appellee established a reasonable expectation of privacy on the basis that he had automatic standing to challenge the search. In addition, although initially finding that probable cause existed to search the car, but that no exigent circumstances existed, the suppression court ultimately opined that the trooper lacked both probable cause or exigent circumstances to conduct the search. The court added that a **Terry** frisk of the vehicle pursuant to **Michigan v. Long**, 463 U.S. 1032 (1983), and **Commonwealth v. Morris**, 644 A.2d 721 (Pa. 1994), was unwarranted because Trooper Bradford did not possess specific and articulable facts that

- 3 -

indicated Appellee had access to a weapon or was a threat to the trooper's safety.

The Commonwealth's sole issue on appeal is "[d]id the lower court misapply the law when it granted defendant's motion to suppress his handgun found pursuant to a **Terry** frisk of a lawfully stopped car in which defendant failed to prove any reasonable expectation of privacy?" Commonwealth's brief at 4.

We evaluate the denial of a suppression motion under well-established principles. We consider the evidence of the defendant, as the prevailing party below, and any evidence of the prosecution that is uncontradicted when examined in the context of the record. **Commonwealth v. Peterson**, 17 A.3d 935, 937 (Pa.Super. 2012).[1] This Court is bound by the factual findings of the suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error. **Id**. Importantly, we are not bound by the legal conclusions of the suppression court. **In re T.B.**, 11 A.3d 500, 505 (Pa.Super. 2010).

The Commonwealth argues that because Appellee, a back-seat passenger, did not demonstrate a reasonable expectation of privacy in the

_____

[1] Recently, in **In re L.J.**, 79 A.3d 1073 (Pa. 2013), our Supreme Court applied prospectively a new rule regarding the scope of review in suppression matters. Specifically, it clarified that an appellate court's scope of review in suppression matters includes the suppression hearing record, but not evidence elicited at trial. As this case commenced prior to **L.J.** and no trial occurred, it has no bearing on the instant case.

vehicle, the suppression court erred.[2]  It continues that the suppression court conflated the doctrine of standing with Appellee's burden of showing that he had a reasonable expectation of privacy.  The Commonwealth correctly argues that the two concepts are distinct, and we agree that the suppression court clearly failed to appreciate the difference between automatic standing and a reasonable expectation of privacy.

The suppression court utilized the automatic standing factors to decide whether Appellee had an expectation of privacy.  That test provides that a defendant has automatic standing if he is present on the premises at the time of the search and seizure, has a possessory interest in the item seized, is charged with a possessory offense relative to the seized contraband, or has a proprietary or possessory interest in the searched area. *Commonwealth v. Hawkins*, 718 A.2d 265, 267 (Pa. 1998).  According to

---

[2]  We are cognizant that the Commonwealth failed to articulate this position at the suppression hearing, and only raised Appellee's alleged failure to show an expectation of privacy after the suppression court granted his motion. Ordinarily, issues that are not raised at the first opportunity are waived. Nonetheless, in *Commonwealth v. Santiago*, 822 A.2d 716 (Pa.Super. 2003), this Court held that the Commonwealth's failure to raise the law of the case doctrine in response to a defendant's suppression motion during a suppression hearing did not waive the issue where it presented the argument in a motion to reconsider.  Further, in *Commonwealth v. Hawkins*, 718 A.2d 265, 268 n.3 (Pa. 1998), our Supreme Court stated, "Since, however, our cases place the burden squarely upon the defendant seeking suppression to establish a legitimate expectation of privacy as an essential element of his case, waiver simply is not an issue here."  Thus, the Commonwealth did not waive this position in neglecting to raise the issue at the suppression hearing.

the suppression court, Appellee met three of the four standing factors and therefore had an expectation of privacy in the area searched. This was error. Pennsylvania constitutional jurisprudence requires a separate analysis of standing and an expectation of privacy. *See Hawkins*, *supra*. In this context, our courts have opined that "whether a defendant has a legitimate expectation of privacy is a component of the merits analysis of the suppression motion." *Commonwealth v. Millner*, 888 A.2d 680, 691 (Pa. 2005).

Admittedly, the interplay between standing and the test for a reasonable expectation of privacy, along with what party bears the ultimate burden of proof at a suppression hearing, has caused confusion. *Millner*, *supra* at 690; *see also Commonwealth v. Enimpah*, 62 A.3d 1028 (Pa.Super. 2013), *allowance of appeal granted*, 78 A.3d 613 (Pa. 2013). Part of the uncertainty involving a defendant's burden revolves around the fact that our criminal procedural rules place the burden of proof, which the Pennsylvania High Court has defined as including a burden of production and a burden of persuasion, on the Commonwealth. Pa.R.Crim.P. 581(H). Nonetheless, "a defendant cannot prevail upon a suppression motion unless he demonstrates that the challenged police conduct violated his own, personal privacy interests." *Millner*, *supra* at 692.

The Pennsylvania Supreme Court and this Court, in turn, have thus expressed that a defendant bears a threshold evidentiary burden of

demonstrating a reasonable expectation of privacy. *Millner*, *supra* at 691 ("Appellant's automatic standing does not divest him of the evidentiary responsibility to show that . . . . the police conduct at issue violated a reasonable and legitimate expectation of privacy"); *Hawkins*, *supra* at 267; *Commonwealth v. Carlton*, 701 A.2d 143, 145-146 (Pa. 1997); *Commonwealth v. Gordon*, 683 A.2d 253, 256 (Pa. 1996); *Commonwealth v. Peterson*, 636 A.2d 615, 618 (Pa. 1993); *Commonwealth v. Brown*, 64 A.3d 1101 (Pa.Super. 2013); *Commonwealth v. Caban*, 60 A.3d 120 (Pa.Super. 2012); *Commonwealth v. Maldonado*, 14 A.3d 907 (Pa.Super. 2011); *Commonwealth v. Powell*, 994 A.2d 1096 (Pa.Super. 2010); *Commonwealth v. Burton*, 973 A.2d 428 (Pa.Super. 2009) (*en banc*); *Commonwealth v. Boulware*, 876 A.2d 440, 442-443 (Pa.Super. 2005); *Commonwealth v. Black*, 758 A.2d 1253, 1256 (Pa.Super. 2000); *Commonwealth v. Strickland*, 707 A.2d 531, 534 (Pa.Super. 1998).

Additional confusion surrounding the distinct concepts of automatic standing and whether a defendant possesses a reasonable expectation of privacy is the differing constitutional jurisprudence relative to the Fourth Amendment and Article I, § 8, Pennsylvania's search and seizure provision. Under federal law, there is no automatic standing. *See Rakas v. Illinois*, 439 U.S. 128 (1978); *United States v. Salvucci*, 448 U.S. 83 (1980). Rather, pursuant to federal constitutional jurisprudence, the preliminary

inquiry is whether the defendant has a reasonable expectation of privacy in the area searched or the item seized. In **Commonwealth v. Sell**, 470 A.2d 457 (Pa. 1983), the Pennsylvania Supreme Court declined to jettison the automatic standing rule in Pennsylvania.

In **Sell**, police executed a search warrant at an amusement arcade, seeking stolen firearms. Police found guns located on open shelves on a counter in the arcade where all employees had access. Sell was a partner in the business, but was not present when police conducted their search. He sought to suppress the firearms, alleging that the search warrant was defective. The suppression court determined that Sell had automatic standing, and found the warrant defective. This Court reversed, relying principally on **Salvucci**, **supra**, and **Rakas**, **supra**, holding that automatic standing was no longer a viable concept. On appeal, the Pennsylvania Supreme Court disagreed.

The High Court began by tracing the development of Fourth Amendment standing jurisprudence, concluding that the automatic standing rule was the "high water mark of access in the context of capacity to challenge an asserted Fourth Amendment violation." **Sell**, **supra** at 462. The Pennsylvania Supreme Court continued by discussing the legitimate expectation of privacy test first suggest by Justice Harlan in **Katz v. United States**, 389 U.S. 347 (1967), and subsequently adopted by a majority of

the United States Supreme Court. **See Smith v. Maryland**, 442 US. 735 (1979).

It then engaged in a discussion and criticism of **Rakas**, **supra**. The **Rakas** decision had eliminated a part of the automatic standing rule for Fourth Amendment purposes. Therein, the defendants were passengers in a vehicle owned by the driver. Police conducted a traffic stop after being notified of a robbery and receiving a description of the getaway car. The defendants, as well as the driver, and two female companions were directed to exit the vehicle. Two police officers then searched the interior of the car. They found a box of rifle shells in a locked glove compartment and a sawed-off rifle underneath the front passenger seat. The defendants filed a suppression motion. The prosecution asserted that the defendants did not have standing because they did not own the vehicle, or assert an ownership interest in the rifle or shells. The suppression court agreed.

The majority in **Rakas** concluded that automatic standing based on a party being legally on the premises, *i.e.*, in the car, at the time of the search, was no longer a valid paradigm. Instead, it held that a defendant must establish a legitimate expectation of privacy. It then ruled that the defendant passengers did not have a legitimate expectation of privacy in the glove box or under the seat. Justice White in dissent recognized that the decision in **Rakas** effectively prohibited a passenger without a possessory or ownership interest in a car from contesting a vehicle search under the Fourth

Amendment. In his view, while the interior of cars are accorded less protection than a home, there is "some cognizable level of privacy in the interior of an automobile." **Rakas**, **supra** at 157 (White, J., dissenting). According to Justice White, the cornerstone of Fourth Amendment analysis was privacy. For him, the Fourth Amendment's protections did not depend "upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion." **Id**. at 162 (quoting **Mancusi v. DeForte**, 393 U.S. 364 (1968)).

The **Sell** Court observed that Justice White's dissent in **Rakas**, joined by three other Justices, "persuasively argued that the majority's test was divorced from the purpose of the Fourth Amendment[.]" **Sell**, **supra** at 465. Ultimately, the **Sell** Court opined,

> We decline to undermine the clear language of Article I, section 8 by making the Fourth Amendment's amorphous "legitimate expectation of privacy" standard a part of our state guarantee against unreasonable searches and seizures. We do so not only because we find the United States Supreme Court's analytical distinction between "standing" and "threshold substantive question," **see Rakas**, **supra** 439 U.S. at 139 n. 7, 99 S.Ct. at 428 n. 7, unhelpful to our interpretation of Article I, section 8's protection, but also because we believe the United States Supreme Court's current use of the "legitimate expectation of privacy" concept needlessly detracts from the critical element of unreasonable governmental intrusion.
>
> Article I, section 8 of the Pennsylvania Constitution, as consistently interpreted by this Court, mandates greater recognition of the need for protection from illegal governmental conduct offensive to the right of privacy.

*Id*. at 468. It continued, "[s]o long as a person seeks to preserve his effects as private, even if they are accessible to others, they are constitutionally protected. Stated differently, a person must maintain the privacy of his *possessions* in such a fashion that his 'expectations of freedom from intrusion are recognized as reasonable.'" *Id*. at 468-469 (quoting ***Commonwealth v. White***, 327 A.2d 40, 42 (Pa. 1974)) (italic in original).

Despite ***Sell's*** criticism of the United States Supreme Court decisions that eliminated the federal automatic standing rule, the Pennsylvania Supreme Court has since adopted a form of the federal reasonable expectation of privacy test. ***Millner***, ***supra*** at 691; ***Hawkins***, ***supra***; ***Peterson***, 636 A.2d 615; ***see also Commonwealth v. Rekasie***, 778 A.2d 624, 629 (Pa. 2001). Further, this Court has stated that our Supreme Court, "essentially aligned this Court's search and seizure jurisprudence with respect to a defendant's establishment of a personal expectation of privacy in a searched vehicle with federal jurisprudence such [as] ***Rakas***, ***supra***, ***Salvucci***, ***supra***; and ***Rawlings*** [***v. Kentucky***, 448 U.S. 98 (1980)]." ***Powell***, ***supra*** at 1107.

It is settled that a "legitimate expectation of privacy is present when there is both a subjective privacy expectation coupled with objective reasonableness." ***Hawkins***, ***supra*** at 267 n.1. The method of proving this by a defendant remains opaque, although the Commonwealth's own

evidence can establish that a defendant has a reasonable expectation of privacy. *See Burton*, *supra*.

Our Supreme Court has concluded that a defendant, standing outside of a car, who dropped a firearm into another individual's vehicle, did not establish an expectation of privacy in that automobile. *Millner*, *supra*. In yet another case, this Court has determined that a driver of a car registered to his girlfriend did not prove a reasonable expectation of privacy in his girlfriend's vehicle where neither he nor his girlfriend testified that he had permission to use the car. *Maldonado*, *supra*.

Similarly, we have held that a driver of a rental car did not demonstrate an expectation of privacy in that vehicle where he was not the lessee, the named lessee was not in the automobile, and no evidence established the driver or his passenger's connection to the lessee. *Burton*, *supra*. In an additional case, we held that a driver of a truck did not meet his burden where he did not own the truck or introduce evidence showing that the owner granted him authority to utilize the vehicle. *Brown*, *supra*.[3] In *Commonwealth v. Cruz*, 21 A.3d 1247 (Pa.Super. 2011), this Court concluded that a defendant could not succeed on a suppression motion

_____

[3] Judge Strassburger, the author of *Commonwealth v. Brown*, 64 A.3d 1101 (Pa.Super. 2013), speaking solely for himself, asserted that a driver in a vehicle should be presumed to have an expectation of privacy in the vehicle. He did not extend his position to non-possessory interested passengers, though that question was not before the Court.

where he did not present any "evidence that he owned the vehicle, that it was registered in his name, or that he was using it with the permission of the registered owner. *Id*. at 1251.

In *Commonwealth v. Viall*, 890 A.2d 419 (Pa.Super. 2005), we held that a passenger did not have an expectation of privacy in a common area of the backseat. Therein, police pulled over a vehicle for a burned-out taillight. Inside the vehicle were the driver, his wife, and three additional passengers in the back seat. The driver had an expired license and only one passenger had a valid driver's license. After issuing a citation, police asked for consent to search the vehicle from the driver. The driver consented, and police found cocaine in a common area in the backseat.

This Court began by opining, "it would be unreasonable to maintain a subjective expectation of privacy in locations of common access to all occupants." *Id*. at 423. It continued that, "it would be unreasonable for [a]ppellant to have expected to maintain a privacy interest in objects which were placed inside the car and not shielded from the view of the many others occupying the same small space." *Id*.

We have also held that a passenger did not have a reasonable expectation of privacy in the trunk of a car driven by the car owner's husband. *Powell*, *supra*. In *Powell*, we considered a Commonwealth appeal where the suppression court had suppressed drugs found in the trunk of a car with a New York license plate in which the two appellees were riding.

State police had stopped the car due to large objects hanging from the rearview mirror. The *Powell* Court affirmed the suppression order as to the driver of the car, whose wife was the registered owner of the vehicle, finding that he did not give consent to search the trunk. However, with respect to the passenger in the vehicle, it reversed, finding that the passenger did not establish a reasonable expectation of privacy in the trunk. In doing so, the court in *Powell* relied on *Millner*, *supra*, and *Rakas*, *supra*.

In contrast, this Court has determined that a passenger in a vehicle, which the passenger borrowed from his father, did have a reasonable expectation of privacy in the car. We specifically rejected that "the distinction between automobile drivers and passengers plays any important role in determining whether a reasonable expectation of privacy exists in a particular case." *Caban*, *supra* at 130.[4]

In *Commonwealth v. Newman*, 84 A.3d 1072 (Pa.Super. 2014), we found that the Commonwealth's evidence established that the defendant had a reasonable expectation of privacy where he was the driver and sole occupant of the vehicle, and no evidence indicated that he did not have an expectation of privacy in the car. The *Newman* Court distinguished

_____

[4] The panel in *Commonwealth v. Caban*, 60 A.3d 120 (Pa.Super. 2012), determined that the defendant established an expectation of privacy based on evidence introduced at trial. Such an analysis would no longer be permitted in cases arising after *In re L.J.*, 79 A.3d 1073 (Pa. 2013), which limits an appellate court's scope of review to evidence introduced at the suppression hearing unless the evidence was unavailable at that time.

*Burton*, *supra* and *Cruz*, *supra*, on the grounds that the Commonwealth's evidence "cast serious doubt that the defendants in those cases had a legitimate expectation of privacy in the vehicles they were operating." *Id*. at 1078.

Appellee maintains that under Article I, § 8, he had a reasonable expectation of privacy in the gun placed beneath his seat and away from the view of others. He highlights that in certain areas Article I, § 8 provides broader protections than does the Fourth Amendment because of this Commonwealth's fidelity to strong notions of personal privacy. In leveling his argument, he points out that an individual's effects and possessions are protected from unreasonable searches and seizure, and contends that "he does have an expectation of privacy in the portion of the car under his seat when used to shield his possessions from view." Appellee's brief at 16. He distinguishes this case from *Viall*, *supra*, and *Powell*, **supra**.

With respect to *Viall*, Appellee posits that the Court held that the passenger did not have a privacy interest in the entire passenger compartment of the car or where the object was not shielded from the view of the other occupants. Instantly, he submits that he is not seeking a privacy interest in the entire car and that he did shield the object from the view of others. He adds that the area under his seat is distinct from the trunk, which was at issue in *Powell*. Accordingly, he contends that he had a subjective expectation of privacy.

In addition, Appellee argues that his expectation of privacy is objectively reasonable. According to Appellee, "[a]n average person would equate an intrusion into his personal space, including the seat that he is sitting upon, as a search and invasion of his privacy." Appellee's brief at 17. He further suggests that failing to recognize an expectation of privacy in this matter results in major inconsistencies in the law. First, he argues that an illogical distinction between illegal stops and illegal searches is created. In this respect, he asserts that if a car is illegally stopped and seized, then items recovered from the vehicle may be suppressed. *See Brendlin v. California*, 551 U.S. 249 (2007). However, if the car is illegally searched, a non-possessory interested passenger, under Fourth Amendment law, has no expectation of privacy and cannot succeed on a suppression motion.

Second, Appellee avers that "there is an irrational distinction in federal law between motions to suppress raised by passengers and drivers." Appellee's brief at 19. He notes that a passenger with no possessory interest in a car will not be able to succeed on a suppression motion while a driver will. *See also Powell*, *supra*. Thus, a passenger can be successfully prosecuted but a driver can escape prosecution based on the driver possessing an expectation of privacy in the vehicle. In his view, this would allow police to illegally search vehicles with more than one occupant knowing that not all of the occupants have an expectation of privacy.

We find force in Appellee's arguments. Indeed, non-owner passengers who are illegally stopped may succeed on a suppression motion where items are recovered from a vehicle. *See Brendlin*, *supra*; *Commonwealth v. Houston*, 689 A.2d 935 (Pa.Super. 1997). In contrast, a blanket holding that Pennsylvania's constitutional jurisprudence does not recognize an expectation of privacy in a car by a non-possessory interested occupant would preclude suppression where a car is lawfully stopped, but searched without either reasonable suspicion or probable cause. *See Rakas*, *supra*.

However, we do not read Pennsylvania case law as absolutely prohibiting a finding of an expectation of privacy by a non-possessory interested passenger. *Millner*, *supra* at 694 (Cappy, C.J., concurring, joined by Newman, J., and Baer, J.) ("our decision today should not, in any way, be interpreted to represent support for the broad proposition that passengers in a vehicle or those with something other than ownership interests in a vehicle cannot establish a legitimate expectation of privacy in the vehicle searched"); *cf*. *Houston*, *supra*; *but see Powell*, *supra*. Pointedly, the issue in this case is more narrow. That is, did Appellee or the Commonwealth actually provide evidence that, based on the totality of the circumstances, supports the legal conclusion that Appellee possessed a reasonable expectation of privacy in the car?

Since Appellee presented no evidence nor argued that he had an expectation of privacy at the suppression hearing, we must look to the

Commonwealth's evidence. Phrased differently, does the Commonwealth's evidence demonstrate that Appellee had both a subjective privacy expectation in the area underneath the seat he was occupying where others were seated in the backseat and that his expectation was objectively reasonable?

Appellee has not established a possessory interest in the vehicle nor did he claim to be the owner of the weapon, *i.e.*, the effect in question.[5] Further, no evidence was introduced to show that the driver owned the car or had permission to use that vehicle, which could have inferentially supported Appellee's legitimate presence therein. Moreover, under prior decisions, legitimate presence in a car is insufficient to establish a subjective expectation of privacy in places where others could have access to the item at the same time. **See Viall**, **supra**; **but compare**, **Sell**, **supra** at 468 ("[s]o long as a person seeks to preserve his effects as private, even if they are accessible to others, they are constitutionally protected."). Also, the fact that the gun was hidden does not on its face warrant the conclusion that an objective expectation of privacy existed. **Millner**, **supra** at 692 ("A defendant's attempt to secrete evidence of a crime is not synonymous with a

_____

[5] If Appellee testified to owning the gun, his statement could not be used against him at trial for substantive purposes. **See United States v. Salvucci**, 448 U.S. 83 (1980). This calls into question portions of this Court's reasoning in **Commonwealth v. Enimpah**, 62 A.3d 1028 (Pa.Super. 2013), *allowance of appeal granted*, 78 A.3d 613 (Pa. 2013).

legally cognizable expectation of privacy. A mere hope for secrecy is not a legally protected expectation."). In sum, although Appellee could have an expectation of privacy underneath the seat he occupied or in his effects placed in that area, the Commonwealth's own evidence does not establish that he had both a subjective expectation of privacy and that his expectation was objectively reasonable. This, however, does not end our inquiry. A suppression court may be affirmed on any basis as long as there is support in the record. *In re T.P.*, 78 A.3d 1166, 1170 (Pa.Super. 2013).

Appellee has alternatively argued, and asserted below, that he was subjected to an illegal custodial arrest prior to the search of the car. Since his arrest was illegal, he maintains that the gun found as a result of the search of the car must be suppressed as fruit of the tainted arrest. Appellee contends that, based on **Commonwealth v. Lovette**, 450 A.2d 975 (Pa. 1982), a custodial arrest occurs where police indicate "an intention to take the person into custody and subjects him to the actual control and will of the person making the arrest." Appellee's brief at 7-8 (quoting **Lovette**, **supra** at 978). Viewing the totality of the circumstances, Appellee recites that he was ordered out of the car, frisked, handcuffed, and then placed in the back seat of a police car while another officer stood close by. In Appellee's view, the act of handcuffing him and placing him into the police car resulted in a custodial detention because no reasonable person would not believe he was under arrest. He adds that "[t]he car search and the recovery of the firearm

was the fruit of the illegal seizure of Mr. Bussey's person." Appellee's brief at 8-9 (citing **Wong Sun v. U.S.**, 371 U.S. 471 (1963)).

In determining whether a custodial arrest has occurred, our standard is an objective one, with consideration given to the reasonable impression conveyed to the person being detained rather than the subjective view of the police or the detainee. **Commonwealth v. Edmiston**, 634 A.2d 1078, 1085-1086 (Pa. 1993). A police detention is custodial when, "under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to become the functional equivalent of an arrest." **Commonwealth v. Turner**, 772 A.2d 970, 974 (Pa.Super. 2001) (*en banc*).

Accordingly, Pennsylvania courts have defined an arrest as "an act that indicates an intention to take the person into custody and that subjects the person to the will and control of the person making the arrest." **Commonwealth v. Butler**, 729 A.2d 1134 (Pa.Super. 1999) (quoting **Commonwealth v. Rodriguez**, 614 A.2d 1378, 1384 (Pa. 1992)); **see also Lovette**, **supra** at 978; **Commonwealth v. Douglass**, 539 A.2d 412 (Pa.Super. 1988).[6] Of course, police need not use actual force or provide a

_____

[6] Pennsylvania courts have also utilized a similar but not identical standard for evaluating whether an arrest is made. This test defines an arrest as "an act that indicates an intention to take that person into custody **or** subjects him to the actual control and will of the person making the arrest. **Commonwealth v. Turner**, 772 A.2d 970, 974 (Pa.Super. 2001) (*en banc*) (emphasis added) (quoting **Commonwealth v. Gwynn**, 723 A.2d 143, 148 (Pa. 1998) (OAJC)); **Commonwealth v. Guillespie**, 745 A.2d 654, 660

*(Footnote Continued Next Page)*

formal statement of arrest for the detention to be considered an arrest. *Douglass*, *supra* at 419 (citing *Commonwealth v. Daniels*, 317 A.3d 237 (Pa. 1974)).[7]

Pennsylvania courts have consistently noted that the act of placing a person in handcuffs is not *per se* sufficient to constitute an arrest. *See Butler*, *supra* at 1138 n.6; *Commonwealth v. Carter*, 643 A.2d 61, 67 n.2 (Pa. 1994). Concomitantly, the placing of an individual into the backseat of a police car does not automatically result in an arrest having taken place. *Commonwealth v. Revere*, 888 A.2d 694 (Pa. 2005). In *Revere*, our Supreme Court concluded that placing a defendant and his companion into the backseat of an unmarked police cruiser without handcuffing them or frisking them, and transporting them briefly, did not constitute a custodial detention. In contrast, in *Commonwealth v. Sepulveda*, 855 A.2d 783 (Pa. 2004) (OAJC), a majority of judges agreed that handcuffing the defendant, placing him in the back of a patrol car, and locking the door

---

*(Footnote Continued)* ———————————

(Pa.Super. 2000). This Court has previously noted the distinction between the two definitions. *Commonwealth v. Hannon*, 837 A.2d 551 (Pa.Super. 2003). As *Turner* relies on *Gwynn* and *Gwynn* cited to *Commonwealth v. Lovette*, 450 A.2d 975 (Pa. 1982), we have utilized the *Lovette* standard, which uses the conjunctive test.

[7] We are aware that the decision in *Commonwealth v. Douglass*, 539 A.2d 412 (Pa.Super. 1988), was decided by a three judge panel with two judges concurring in result. Therefore, it is not precedential standing alone.

constituted a custodial detention.[8]  The **Sepulveda** Court dismissed its earlier non-precedential decision of **Commonwealth v. Gwynn**, 723 A.2d 143 (Pa. 1999) (OAJC), as not controlling on this issue.

The **Gwynn** plurality ruled that a defendant who was initially placed without handcuffs into the rear of a police vehicle, and only handcuffed after being observed attempting to escape, was not arrested.  The **Sepulveda** Court set forth that **Gwynn** was both factually distinguishable and to the extent that it could "be read as establishing the broad proposition that an individual who is handcuffed and placed in a patrol car is not in 'custody' for any purpose, this Court has clearly taken a contrary position in this opinion today."  **Sepulveda**, **supra** at 791 n.12.

In our *en banc* **Turner** decision, this Court determined that the placing of an intoxicated individual, without handcuffs, into the backseat of a police car and closing the door "was the functional equivalent of being arrested[.]" **Turner**, **supra** at 974.  However, in **Guillespie**, **supra**, we ruled that putting an individual in handcuffs after conducting a pat-down frisk was not an arrest, where police told the defendant that he was being handcuffed because he matched the description of a robbery suspect and they were waiting for the victim to arrive.  The victim did not identify the defendant,

---

[8]  In **Sepulveda**, four justices authored concurring opinions, with one justice dissenting.  However, three of the concurring justices agreed with the lead author that the defendant was in custody.

and the *Guillespie* Court expressly noted that the record did not establish that the defendant was placed in a police car. *Id*. at 661. This Court in *Butler*, *supra*, found an arrest occurred where police ordered the defendant to put his hands up and exit a storm door of a residence, frisked him, and then handcuffed him and put him into the back seat of an unmarked police car.

Instantly, based on the totality of circumstances, we agree that an objectively reasonable person would believe that he was arrested where police took the individual and three of his companions out of the car, frisked each of them, and then handcuffed each person, before putting them into the backseat of a police car. *See Sepulveda*, *supra*; *Butler*, *supra*. Since Appellee was in custodial detention, police were required to demonstrate probable cause. "Probable cause exists where the facts and circumstances within the knowledge of the officer are based upon reasonably trustworthy information and are sufficient to warrant a man of reasonable caution in the belief that the suspect 'has committed or is committing a crime.'" *Commonwealth v. Delvalle*, 74 A.3d 1081, 1085 (Pa.Super. 2013). Here, the Commonwealth concedes that "Trooper Bradford had no grounds to arrest [Appellant.]" Commonwealth's brief at 16. Thus, we conclude that Appellant's arrest was unlawful.

The dissent opines that it is immaterial whether Appellant was unlawfully arrested because he did not establish an expectation of privacy in

the vehicle. It reads **Millner**, **supra**, as holding that an unlawful arrest will not warrant suppression where a defendant does not establish an expectation of privacy in the area searched. We disagree that **Millner** is controlling on the precise question here, as the facts are wholly dissimilar. Moreover, the dissent's analysis taken to its logical conclusion would authorize police to illegally arrest multiple persons and search a vehicle following a traffic stop because at least one individual would be unable to show an expectation of privacy in the vehicle.

Unlike **Millner**, the search of the car herein flowed from the unlawful arrest and was incident to that illegal detention. In **Millner**, the defendant was not a passenger in the vehicle nor ever observed traveling inside the car. The case did not involve a traffic stop. Rather, police witnessed the defendant therein, a pedestrian, dispose of a weapon inside the car. Police then observed the firearm in the car in plain view. Whether the defendant was illegally arrested was immaterial to the observation of the gun inside the car. We find this case more analogous to the situation where police unlawfully stop a vehicle and search the car. In that situation, the fact that a person does not have an expectation of privacy in the car does not automatically preclude suppression. **See Brendlin**, **supra**. In both the unlawful stop of a car and the lawful stop but illegal arrest scenario, police have illegally seized the passengers in the car. The subsequent search is

directly related to the illegal seizure in both instances. Accordingly, we find that the suppression court did not err in suppressing the evidence.

Order affirmed.

Judge Ott joins the Memorandum.

Judge Jenkins files a Dissenting Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/16/2014